The NEWS–CHRONICLE COMPANY,
Petitioner,

v.

PENNSYLVANIA HUMAN RELATIONS
COMMISSION, Respondent.

Commonwealth Court of Pennsylvania.

Argued Dec. 7, 1995.
Decided March 1, 1996.

Mark D. Schwartz, for Petitioner.

Ronald W. Chadwell, Assistant Chief Counsel, for Respondent.

Before SMITH and PELLEGRINI, JJ., and NARICK, Senior Judge.

NARICK, Senior Judge.

The News–Chronicle Company (Employer) appeals from an order of the Pennsylvania Human Relations Commission (Commission) which ordered Employer to pay Constance L. Mull a lump sum representing her lost wages as a result of Employer's breach of a contract. We affirm.

On September 24, 1991, Mull filed a complaint with the Commission alleging that Employer paid her unequal pay for equal work and harassed her because of her sex. Mull and Employer entered into a Settlement Agreement on January 5, 1992 which provided in pertinent part:

[Employer] agrees to increase [Mull's] pay to $280 per week effective January 3, 1992.

[Employer] agrees to pay [Mull] bonus of $600 if she was still working for [Employer] on January 3, 1993.

Nothing in the agreement precludes [Mull] from getting any other raises that may be coming to her thru [Employer's] normal procedures in the future.

[Employer] further agrees not to act adversely in any manner against [Mull] because of this complaint; and not to permit such adverse action by any of [Employer's] employees.

(47a). In exchange for the promises made by Employer, Mull agreed to have her discrimination complaint dismissed by the Commission as voluntarily adjusted.

On March 24, 1992, Employer notified Mull that she, along with all other full-time news writers, would be changed from a salaried employee to an hourly employee, effective April 3, 1992. As of June 12, 1992, Mull and fourteen other hourly employees, out of a total of thirty-five employees, had their hours reduced from forty hours per week to thirty-five hours per week. As a result of this reduction in hours, Mull's weekly pay was reduced from $280 to $245. Mull received this amount until she resigned in February, 1993 to take a position with another employer at a higher rate of pay.

On June 25, 1992, Mull filed a Petition for Reconsideration of Adjustment,[1] alleging that Employer had breached the Settlement Agreement. A hearing was held before a hearing examiner on January 31, 1995, at which Mull and a representative of Employer testified. Employer sought to enter into evidence an unsigned, faxed copy of a handwritten document, purportedly written by Kenneth Wolfrom, Employer's president, entitled "Response by The News–Chronicle Co." The hearing examiner refused to admit the document primarily because it was unsigned and unverified and further because insufficient indicia existed that Kenneth Wolfrom made the statement.

■ On April 10, 1995, the hearing officer issued a recommended order in which he concluded that Employer had breached the terms of the Settlement Agreement by reducing Mull's salary and that Employer's reason for the reduction was not sufficient to allow it to breach the Agreement. On June 13, 1995, the Commission adopted the findings of fact, conclusions of law, opinion and order of the hearing officer. The Commission ordered Employer to pay to Mull a lump sum of $1155 representing her lost earnings and interest thereon. Employer now appeals to this Court.[2]

On appeal, Employer argues that: (1) the reduction in hours and pay of numerous employees did not constitute a breach of the Settlement Agreement between Employer and Mull because the reductions were made out of economic necessity and not as a means of avoiding the provisions of the Settlement Agreement; (2) the hearing officer erred in failing to admit into evidence the written response of Employer's president where Employer was not represented by legal counsel; and (3) the written response of Employer's president should be part of the reproduced record even though it was not admitted into evidence by the hearing officer.

Employer first argues that it was forced by economic necessity to reduce the hours of numerous employees, including Mull. Employer contends that this reduction in hours does not constitute a breach of the Settlement Agreement because the Settlement Agreement contains an implied condition that Employer be financially capable of performance.[3]

---

1. Pursuant to 16 Pa.Code § 42.73, a party has the right to petition the Commission to consider whether another party has complied with the terms of an adjustment or settlement.

2. Our scope of review of a Commission matter is whether the adjudication is in accordance with the law, whether constitutional rights were violated or whether the findings of fact are supported by substantial evidence. *Robert Wholey Co. v. Pennsylvania Human Relations Commission,* 146 Pa.Cmwlth. 702, 606 A.2d 982 (1992),

*petition for allowance of appeal denied,* 532 Pa. 659, 615 A.2d 1314 (1992).

3. Employer relies on *McDole v. Duquesne Brewing Co. of Pittsburgh,* 281 Pa.Superior Ct. 78, 421 A.2d 1155 (1980). In that case, the brewery had entered into "lifetime" employment contracts with its employees. Approximately fourteen years after the contracts were signed, the brewery ceased operations after several years of economic losses. Each employee filed suit seeking to enforce his lifetime contract. The Chancellor

In determining that Employer breached the Settlement Agreement, the Commission relied on *Dorn v. Stanhope Steel, Inc.*, 368 Pa.Superior Ct. 557, 534 A.2d 798 (1987), *petition for allowance of appeal denied*, 518 Pa. 656, 544 A.2d 1342 (1988). In that case, Dorn and Stanhope entered into a five-year agreement which provided that Dorn would be the sole and exclusive broker for certain of Stanhope's products. Prior to the end of the five-year period, all of Stanhope's assets were sold by Stanhope's parent corporation to another company and Stanhope went out of business. Dorn was notified that the agreement was terminated and he filed suit seeking damages for breach of the agreement.

On appeal, the Superior Court held that Stanhope remained obligated under the agreement to pay Dorn the agreed upon compensation. The Court was unpersuaded by Stanhope's evidence of its financial difficulties, including its assertion that it had lost vast amounts of money during the three years prior to Dorn's termination. The Court stated that Stanhope failed to establish that the change in the business environment was well beyond the normal range, noting that in order to prevail under the doctrine of commercial impracticability, a party must show not only that performance under the contract would result in a loss, but also that the loss would be especially severe and unreasonable. The Court stated that this high standard is necessary because "otherwise, every agreement that becomes disadvantageous to a party as a result of a subsequent downturn in the economy, would entitle that party to be excused from performing under the agreement." *Id.* at 586, 534 A.2d at 813.

Here, the hearing examiner determined that Employer had not shown the type of severe economic situation which would allow it to breach the Settlement Agreement. The hearing examiner noted that Employer had reduced the hours and pay of only fifteen of its thirty-five employees while the remaining employees continued to receive full pay. Thus, the hearing examiner did consider whether Employer had shown that it was unable to perform the contract due to impracticability and had found Employer's evidence not sufficient to prevail under that theory.[4]

■ Employer also contends that the hearing examiner should have admitted into evidence the statement of Kenneth Wolfrom. Employer argues that the document should have been admitted because the rules of evidence are relaxed in an administrative proceeding.

■ Under Section 505 of the Administrative Agency Law, 2 Pa.C.S. § 505, administrative agencies are not bound by the technical rules of evidence and all relevant evidence of reasonably probative value may be received. Where the record demonstrates that the evidence sought to be introduced is not reasonably probative, the evidence may be excluded. *Franklin Plastics Corp. v. Department of Environmental Resources*, 657 A.2d 100 (Pa.Cmwlth.1995). The liberal rules of evidence relating to administrative agencies give such agencies broad discretion in admitting or excluding evidence, so that the exclusion alone may not constitute a procedural defect. *Id.*

■ The hearing examiner refused to admit the document on the basis that it was unsigned, unverified and did not contain sufficient indicia that Kenneth Wolfrom made the statement. Employer acknowledges that the document was not in proper legal form but argues that the document could have

denied the employees' request for injunctive relief and monetary damages. The Chancellor found that it was the intent and belief of the parties, at the time the contracts were negotiated, that the brewery would continue to operate and therefore the continued existence of the brewery was an implied condition of the employment contracts. On appeal, the Superior Court looked at the transcript of the testimony of the parties at the hearing before the Chancellor and at the provisions of the contracts themselves and found substantial evidence to support the Chancellor's finding. As Employer in the case before us never ceased operations, this case is clearly not on point.

4. Employer also contends that the Settlement Agreement contained an implied condition that Mull continue to work full-time for Employer. There is nothing in the record to suggest that Mull was unable or unwilling to work a forty-hour week.

been verified by Wolfrom at a later time or that, at the hearing, Employer's witness could have verified the document as being Wolfrom's statement.[5] Employer contends that the hearing examiner should have advised Employer of these options.

■ Employer cites no authority to support its argument that the hearing examiner should have assisted it in attempting to have the document admitted into evidence. Generally, a party choosing to represent itself in a legal proceeding must, to some reasonable extent, assume the risk that its lack of expertise and legal training will prove its undoing. *Groch v. Unemployment Compensation Board of Review,* 81 Pa.Cmwlth. 26, 472 A.2d 286 (1984).

We hold that the hearing examiner did not err in refusing to admit into evidence a document which, as Employer admits, was not in proper legal form. We further hold that the hearing examiner did not err in failing to offer Employer advice as to how to authenticate the document.[6]

Accordingly, we affirm.

### ORDER

AND NOW, this 1st day of March, 1996, the order of the Pennsylvania Human Relations Commission in the above-captioned matter is hereby affirmed.

---

5. A document may be authenticated by direct proof, such as the testimony of a witness that the author signed the document, acknowledgement of execution by the signer, admission of authenticity by an adverse party, or proof that the document or its signature is in the purported author's handwriting, or by circumstantial evidence. *Commonwealth v. Brooks,* 352 Pa.Superior Ct. 394, 508 A.2d 316 (1986).

6. Because of our disposition of Employer's first two arguments, we need not consider the third.