**D.Z., Petitioner**

**v.**

**BETHLEHEM AREA SCHOOL DISTRICT, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 4, 2009.

Decided July 27, 2010.

Kathryn E. Potalivo, Philadelphia, for petitioner.

Glenna M. Hazeltine, Bethlehem, for respondent.

BEFORE: COHN JUBELIRER, Judge, and SIMPSON, Judge [1], and KELLEY, Senior Judge.

OPINION BY Judge SIMPSON.

In this appeal, D.Z. asks whether a Special Education Hearing Officer (Hearing Officer) erred in determining that Bethlehem Area School District (School District) properly implemented a Gifted Individualized Education Program (GIEP) [2] for her son, J.Z. (Student), with regard to his status as a gifted student under Pennsylvania law for Student's 2007–2008 (3rd grade) and 2008–2009 (4th grade) school years.

D.Z. represented herself during the hearings discussed below, although she retained counsel after appealing to this Court. She raises several issues, most of which concern the Hearing Officer's procedural rulings during the course of the hearings. In *D.Z. v. Bethlehem Area School District (D.Z.I)*, 2 A.3d 712 (Pa. Cmwlth.2010), a case concerning another of D.Z.'s children, we addressed similar challenges to procedural rulings by the same Hearing Officer. As in *D.Z.I*, we discern no reversible error in the Hearing Officer's procedural rulings here. Therefore, we affirm.

As noted in *D.Z.I*, the matters between these parties have a complicated and convoluted history. The relevant portions of that history may be summarized as follows.

At the time of the proceedings before the Hearing Officer, Student was a 4th grade student residing within the School District. Student was identified as a gifted student under Pennsylvania educational legislation.

In a prior dispute over Student's gifted educational programming that also resulted in a due process hearing, a different hearing officer determined the School District appropriately designed and properly implemented Student's GIEP for the 2006–2007 school year, when Student was in 2nd grade (2007 GIEP Decision). Reproduced Record (R.R.) at 70a–79a. The hearing officer also ordered the School District to slightly modify and implement the GIEP for Student's 3rd grade year. Specifically, the hearing officer recognized the School District agreed to place Student in 4th grade for mathematics instruction during the 3rd grade year, and she ordered that it do so. R.R. at 77a, 79a. Based on the evidence presented, however, the hearing officer determined acceleration in areas such as reading and written expression was not required. R.R. at 77a–78a. Thus, the hearing officer denied all other requests by D.Z. for modification of the GIEP. The hearing officer also determined a GIEP meeting should be held more frequently to determine if appropriate educational progress was made and if additional enrichment was needed. R.R. at 78a. After incorporation of the ordered modification for acceleration in mathematics, the School District issued another GIEP on July 30, 2007, for Student' 3rd grade school year.

---

1. This case was reassigned to the author on April 28, 2010.

2. Title 22, Chapter 16 of the Pennsylvania Code sets forth the extensive requirements for drafting GIEPs, including identifying the gifted child, completing a multi-disciplinary evaluation and reevaluation, and writing a GIEP with the student, the student's parents, and representatives from the school district. *See B.C. ex rel. J.C. v. Penn Manor Sch. Dist.*, 906 A.2d 642 (Pa.Cmwlth.2006).

Thereafter, the School District proposed a GIEP for the 2008–2009 school year, when Student was in 4th grade, but the parties could not reach an agreement. As a result, the GIEP for Student's 3rd grade year remained in effect. *See* 22 Pa.Code § 16.63(a) (prior GIEP in effect at the time of rejection of, and/or subsequent challenge to, newly proposed GIEP remains in effect for a student during the pendency of any such rejection and/or challenge). Thus, the GIEP for Student's 3rd grade year, which the prior hearing officer specifically deemed appropriate (with acceleration in mathematics), was the pendent GIEP during the course of the proceedings at issue here.

In December 2008, D.Z., representing herself, filed a due process complaint with the Pennsylvania Department of Education, Office of Dispute Resolution.[3] The Hearing Officer held hearings on D.Z.'s complaint on February 6 and May 29, 2009.

D.Z., whose native language is Mandarin Chinese, requested the services of an interpreter at the hearing. The Hearing Officer granted this request. Ms. Danmeng Lin served as an interpreter for the proceedings.

Although D.Z. requested only partial translation on an as-needed basis for clarification purposes during the hearings, the Hearing Officer determined this arrangement would be confusing and problematic. Thus, the Hearing Officer required D.Z. to speak only her native language, and required all spoken English by any hearing participant or official be interpreted into D.Z.'s native language. D.Z. repeatedly objected to the Hearing Officer's "all-or-nothing" translation requirement and to his repeated exclusions of her participation in English.

At the outset of the February 6, 2009 hearing, the Hearing Officer instructed the School District's counsel to qualify the interpreter as to her experience and expertise. After that *voir dire*, the School District offered the interpreter as an expert interpreter. The Hearing Officer accepted that offer, recognizing the interpreter for purposes of translating the proceedings. D.Z. did not object. The interpreter appointed by the Hearing Officer was not officially certified under Pennsylvania law. Notes of Testimony (N.T.) at 6–7.[4]

The Hearing Officer then requested that each party, during their consecutive opening statements, state their positions on the issues presented and their requested result. D.Z. stated her issues concerned: Student's present level of educational performance; her objections to the School District's assessments and/or evaluations of Student; and, the appropriateness of the proposed GIEP for Student's 4th grade year. N.T. at 25–31. D.Z. also articulated issues regarding the goals of the GIEP, evaluative and measurement criteria, Student's enrichment opportunities, the School District's delays in assessing and updating the GIEP, Student's lack of improvement in English in his 3rd grade year, and communication difficulty with the School District. *Id.*

The School District responded that: it proposed a GIEP for Student's 4th grade year which was responsive to his needs and complied with applicable regulations; and, the Hearing Officer did not have jurisdiction over the issue of Student's prog-

---

**3.** Notably, the record does not contain a copy of D.Z.'s complaint.

**4.** The transcripts of the two hearings are sequentially numbered as if one continuous transcript; therefore, we refer to them as one transcript covering the entirety of the two hearings. *See* O.R. at Item # s 3–4.

ress in English because it was not a subject within Student's GIEP. N.T. at 31–35. The School District emphasized the sole issue before the Hearing Officer was whether the GIEP for Student's 4th grade year responded to the areas in which Student was identified as gifted. N.T. at 33–34.

After the parties' opening statements, the Hearing Officer identified two issues: whether the GIEP for Student's 4th grade school year was appropriate; and, whether Student made adequate progress under the GIEP for his 3rd grade year in English/reading/writing. N.T. at 35–41.

After identifying the issues, the Hearing Officer began to hear testimony from Student's 4th grade teacher, prior to the conclusion of the hearing. After a lengthy delay in the proceedings, to which the parties agreed in order to allow for hearings concerning another of D.Z.'s children, the next hearing in this matter occurred on May 29, 2009.

At the outset of the May 29 hearing, the School District announced its intention to formally withdraw the proposed GIEP for Student's 4th grade school year, and it moved to dismiss the matter as moot based on its assertion that the current school year was near an end. The School District also requested that the Hearing Officer issue an order requiring that a GIEP team convene to develop a GIEP for the 2009–2010 school year, Student's 5th grade year.

In response, the Hearing Officer determined that, because the pendent GIEP for Student's 3rd grade year remained in effect for his 4th grade year, and because a different hearing officer determined that GIEP was appropriate, it was, as a matter of law, appropriate for Student's 4th grade year. N.T. at 97–101.

Based on the School District's invitation to D.Z. to participate in a GIEP meeting for Student's 5th grade year, along with the impending completion of Student's 4th grade year, the Hearing Officer focused the remaining proceeding on the "implementation, or teaching, of [Student] in the [3rd] and [4th grade] school years, in English and math." [5] N.T. at 101.

The Hearing Officer heard continued testimony from Student's 4th grade teacher, as well as testimony from Student's 3rd grade teacher, the School District's mathematics specialist who instructed Student during a portion of his 3rd grade year, and Student's mathematics teacher for his 4th grade year. After the conclusion of testimony from these witnesses, D.Z., for the first time, informed the Hearing Officer she needed to leave the hearing immediately for a pre-scheduled appointment, despite the Hearing Officer's desire to hear testimony from D.Z. The Hearing Officer then indicated he did not intend to reconvene the hearings and considered the matter concluded.

Shortly thereafter, the Hearing Officer issued a decision in which he determined the School District properly implemented Student's GIEP in math and English for Student's 3rd and 4th grade years. D.Z. now appeals to this Court.

On appeal and now assisted by counsel,[6] D.Z. raises several issues. Specifically,

---

5. The Hearing Officer also noted D.Z. recently filed another complaint regarding the appropriateness of Student's math instruction in the 3rd and 4th grade years. The Hearing Officer formally dismissed that complaint, and incorporated the issue of "math instruction in those school years" into the ongoing proceedings on D.Z.'s original complaint. N.T. at 101.

6. Our review is limited to determining whether an error of law was committed, whether constitutional rights were violated, or whether necessary findings of fact were supported

she asserts the Hearing Officer: (i) denied her due process by prohibiting her from speaking English during the hearing; (ii) erred in failing to appoint a certified interpreter or "otherwise qualified interpreter" and failing to replace an ineffective interpreter; (iii) erred in dismissing as moot her challenge to Student's GIEP for his 4th grade year; (iv) erred in barring her from challenging the appropriateness of Student's GIEP for Student's 3rd and 4th grade years; and, (v) improperly excluded evidence relevant to the implementation of the GIEP. D.Z. also questions whether the combination of errors that occurred below resulted in a denial of due process. We consolidate our discussion and analysis of these issues where appropriate.

## I. Use of Interpreter

### A. "All–or–Nothing" Approach

D.Z. first maintains the Hearing Officer erred in insisting on an "all-or-nothing" approach to her use of the interpreter in these proceedings, which impaired her ability to effectively question witnesses, present evidence and fully participate in the hearing. Specifically, she contends the Hearing Officer denied her due process by prohibiting her from speaking English, and by requiring her to speak only her native language with translation provided by the appointed interpreter.

In *D.Z.I*, we addressed an identical interpretational arrangement between the same parties, which addressed similar administrative proceedings before the same Hearing Officer, with the same interpreter, involving litigation over the gifted and special education of another of D.Z.'s children. There, we held D.Z.'s due process rights were safeguarded by the statute affording her access to an interpreter for the proceedings. *See* 2 Pa.C.S. § 562. Furthermore, we held the Hearing Officer did not impair D.Z.'s due process rights by using a procedure that afforded D.Z. full access to interpretation of the proceedings. We explained that the Hearing Officer's decision to employ a procedure that required full, rather than partial, translation was an appropriate exercise of his discretion pursuant to the General Rules of Administrative Practice and Procedure, 1 Pa. Code § 35.187. That regulatory provision authorizes the presiding officer of an administrative tribunal to regulate the course of the proceedings before him, including the exercise of discretion over the disposition of procedural matters.

We also noted that by requiring full interpretation of the proceedings, the Hearing Officer exercised his discretion in a manner that provided D.Z. the maximum opportunity to be heard under the applicable interpretational statutes, and, in so doing, he did not abuse his discretion. Based on the rationale expressed in *D.Z.I*, we reject D.Z.'s identical argument here.

### B. Appointment of Interpreter

#### 1. Certified or "Otherwise Qualified" Interpreter

As in *D.Z.I*, D.Z. also takes issue with the Hearing Officer's appointment of the interpreter. Specifically, she asserts the Hearing Officer erred in failing to appoint a certified or otherwise qualified interpreter as required by 2 Pa.C.S. § 563.

D.Z. first notes that the interpreter, by her own admission, was not a certified interpreter under Pennsylvania law. N.T. at 6–7. In the absence of such certification, D.Z. asserts the Hearing Officer erred in failing to properly appoint an

by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704: *Lower Merion Sch. Dist. v. Doe*, 878 A.2d 925

(Pa.Cmwlth.2005), *aff'd*, 593 Pa. 437, 931 A.2d 640 (2007).

otherwise qualified interpreter. To that end, D.Z. argues the relevant statutory provision required the Hearing Officer to determine that "a good faith effort was made to obtain a certified interpreter" and that "a certified interpreter was not reasonably available." 2 Pa.C.S. § 563. She contends there is no record evidence to support such a finding here.

Further, D.Z. asserts, even if the Hearing Officer could have determined that a certified interpreter was not reasonably available, the Hearing Officer did not state on the record that the interpreter read, understood, and agreed to abide by the code of professional conduct for administrative proceeding interpreters, as mandated by 2 Pa.C.S. § 563(b)(2)(ii). D.Z. argues that the express and unambiguous language of that provision states that a hearing officer seeking to appoint an otherwise qualified interpreter "shall" make such statement of record.

In *D.Z.I,* we explained 2 Pa.C.S. § 563(b)(2)(ii) requires a presiding officer state on the record that an "otherwise qualified interpreter" has read, understands and agrees to abide by the code of professional conduct; nevertheless, that provision does not excuse a party from raising an objection where the presiding officer does not make this statement on the record. *Cf. United States v. Huang,* 960 F.2d 1128, 1135 (2d Cir.1992) (emphasis added) ("though the [federal Court Interpreters Act, 28 U.S.C. §§ 1827, 1828,] speaks in mandatory terms as to the duty of the court to establish an interpreter program to protect the rights of a defendant whose only or primary language is other than English, *it does not preclude a defendant from ... waiving any objection he may have to the certification or per-formance of a translator* for a witness.") We further stated that, although we are bound to apply the plain language of perti-nent statutes, our review of the record revealed no indication that D.Z. raised an issue regarding the code of conduct at any time before the Hearing Officer. Thus, we deemed the issue waived.

■ As in *D.Z.I,* our review of the record here reveals D.Z. did not raise the issue regarding the code of conduct before the Hearing Officer. Thus, the Hearing Officer and the School District were deprived of an opportunity to cure the procedural irregularity. For the reasons set forth in *D.Z.I,* we conclude D.Z. waived that issue here as well.

■ Additionally, D.Z. did not assert during the hearings that the Hearing Officer failed to indicate that a good faith effort was made to obtain a certified inter-preter and a certified interpreter was not reasonably available. Thus, the Hearing Officer and the School District were deprived of an opportunity to cure the procedural irregularity. As with the issue regarding the code of conduct, D.Z. failed to preserve this issue.

### 2. Replacement of Interpreter

■ D.Z. further maintains the Hearing Officer's failure to establish that the interpreter was a certified or "otherwise qualified interpreter" was not harmless error. In support, she points to several places in the record that purportedly show the interpreter's inaccuracy or unresponsiveness, and she asserts these problems undermined her ability to effectively question witnesses.

Also, as in *D.Z.I,* D.Z. contends the Hearing Officer erred in failing to replace the interpreter when it became clear she was not effective. *See* 2 Pa.C.S. § 564. In particular, D.Z. argues the interpreter here was unable to correctly interpret D.Z.'s questions. D.Z. asserts the Hearing Officer did nothing to address the inter-

preter's inaccuracies or lack of responsiveness; rather, he questioned D.Z.'s need for an interpreter.

In *D.Z.I*, we explained that demonstrable prejudice is a key factor in assessing whether procedural due process was denied. We also stated that an order of an administrative agency would not be disturbed for harmless error. To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party. *Id.*

Applying these principles in *D.Z.I*, we stated that although D.Z. pointed to several places in the record in an effort to show the interpreters there were ineffective, she offered no clear explanation as to what evidence was precluded or improperly developed because of the alleged ineffective communications. More importantly, she offered no explanation of how such evidence would likely lead to a different result. Absent a clear explanation of harm resulting from the translation problems, we declined to disturb the Hearing Officer's decision.

The rationale and result expressed in *D.Z.I* apply with equal force here. Specifically, D.Z. provides no specific explanation as to what evidence was precluded or improperly developed because of the alleged ineffective communications. In addition, she offers no explanation as to how such evidence would likely lead to a different result. As in *D.Z.I*, absent a clear explanation of harm resulting from the alleged translation problems, we decline to disturb the Hearing Officer's decision on this basis.

## II. Challenge to Design of GIEP

D.Z. next maintains the Hearing Officer erred in barring her from challenging the appropriateness, or design, of Student's GIEP for his 3rd and 4th grade school years. Again, we disagree.

At the outset of the May 29 hearing, the Hearing Officer stated, "[t]he GIEP approved by the previous [h]earing [o]fficer [for Student's 3rd grade year] has formed the basis of [Student's] instruction for [Student's 4th grade year]; and so, as a matter of law, that GIEP is appropriate." R.R. at 28a. Thus, the Hearing Officer declined to consider the appropriateness of the previously adjudicated GIEP, for the then-current 4th grade school year at issue in D.Z.'s complaint. No error is apparent in this determination.

More particularly, *res judicata* bars re-litigation of a claim when the cause of action in one proceeding is identical to that involved in a prior final judgment. *Stilp v. Commonwealth*, 910 A.2d 775 (Pa. Cmwlth.2006). The doctrine applies to administrative agency determinations. *Hall v. Pa. Bd. of Prob. & Parole*, 733 A.2d 19 (Pa.Cmwlth.1999). A party seeking to bar re-litigation of a claim must show the existence of four conditions: (1) identity of the thing sued upon; (2) identity of the cause of action; (3) identity of the persons or parties to the action; and, (4) identity of the quality or capacity of the parties suing or sued. *Stilp.*

Here, the Hearing Officer made the following pertinent findings regarding the appropriateness of Student's GIEP (with emphasis added):

1. The parties have had a history of disagreement over [Student's] gifted education program. *On July 17, 2007, a special education due process hearing officer found that [Student's] GIEP was appropriate and was appropriately implemented in [Student's 2nd grade year] and ordered the GIEP (with slight modifications) to be implemented in [Student's 3rd grade year.]* (Hearing Officer Exhibit ["HO"]-4).

2. The [School] District incorporated the slight modifications ordered by the hearing officer and issued a GIEP on July 30, 2007. (HO–5).

3. The parties met to develop [Student's] GIEP for [Student's 4th grade year] year and could not reach an agreement. *Therefore, the GIEP found to be appropriate in the previous round of due process was implemented for the 2008–2009 school year. That GIEP is the pendent GIEP.* (HO–5; NT at 29).

Hearing Officer Dec., 6/12/09, Findings of Fact Nos. 1–3.

■ Thus, the GIEP for Student's 2nd grade year, which a prior hearing officer determined was appropriate, remained (with slight modification) in full effect for Student's 3rd grade, and later, 4th grade year. Because the educational programming provided by the School District, which a prior hearing officer determined was appropriate, remained in effect for Student's 3rd and 4th grade years, no error is apparent in the Hearing Officer's determination that the GIEP for Student's 4th grade year was appropriate as a matter of law. As such, the Hearing Officer did not err in declining to consider D.Z.'s challenge to the design of Student's GIEP for his 3rd and 4th grade years.

■ More importantly, despite D.Z.'s general contention that the Hearing Officer erred in barring her challenge to the appropriateness of Student's GIEP for

Student's 3rd and 4th grade school years, it is unclear what evidence D.Z. sought to offer that might have shown design of the GIEP was inappropriate. D.Z.'s brief to this Court is silent as to what design evidence she sought to present. Our review fails to reveal an offer of proof in the record. Absent any explanation of the evidence D.Z. wished to present, and how that evidence could have altered the result, it is impossible to discern any prejudice resulting from the Hearing Officer's ruling. Under these circumstances, we discern no reversible error. *See D.Z.I.*[7]

### III. Exclusion of Evidence as to Implementation of GIEP

As a final point,[8] D.Z. contends the Hearing Officer improperly excluded evidence relevant to the issue of whether the School District properly implemented Student's GIEP.

In particular, D.Z. asserts, a review of Student's GIEP for his 3rd grade year reveals his "instructional level" for reading comprehension was "grade 4." R.R. at 88a. However, she argues the annual goals and short term objectives in the GIEP are not written in terms of a 4th grade reading level; rather, the "goals" and "objectives" required the School District to present Student with material at his instructional level during the pendency of the GIEP.

D.Z. argues she attempted to present evidence as to Student's current instruc-

7. Because the Hearing Officer properly declined to consider the issue of the appropriateness of the design of Student's GIEP for his 3rd and 4th grade years, we need not address D.Z.'s claim that the Hearing Officer erred in dismissing as moot her challenge to the appropriateness of the GIEP for Student's 4th grade year.

8. Although D.Z.'s brief lists a sixth question presented, "Whether a combination of errors that occurred during the Special Education

Due Process Hearing resulted in a denial of due process" she did not brief this issue. To the extent that D.Z. intended to raise this as an issue separate from those discussed above, we conclude she waived the issue by failing to develop it or cite authority for it. *E.g., Am. Rock Mechs., Inc. v. Workers' Comp. Appeal Bd. (Bik & Lehigh Concrete Techs.),* 881 A.2d 54 (Pa.Cmwlth.2005) (holding issue waived where appellant failed to develop it or cite authority for it).

tional level in reading during his 4th grade year through the School District's witnesses. Specifically, she contends she tried to ask the School District's witnesses whether they were implementing Student's GIEP at his *current* instructional level, which, during Student's 4th grade year, was higher than his instructional level at the time the GIEP for his 3rd grade year was written, over a year prior. However, D.Z. argues, the Hearing Officer sustained the School District's continued objections to this line of questioning on the ground the questions were not relevant to whether the School District properly implemented the GIEP. R.R. at 35a–38a.

D.Z. asserts she should have been permitted to question the School District's witnesses and present evidence on Student's instructional levels during his 3rd and 4th grade years. She contends such questions were directly relevant to a determination of whether the School District properly implemented the GIEP. D.Z. argues the Hearing Officer's failure to allow examination of witnesses and admission of evidence on issues directly relevant to implementation of the GIEP was an abuse of discretion and denied her due process.

■■■ Under Section 505 of the Administrative Agency Law, 2 Pa.C.S. § 505, administrative agencies are not bound by the technical rules of evidence, and all relevant evidence of reasonably probative value may be received. Where the record reveals the evidence sought to be introduced is not reasonably probative, the evidence may be excluded. *News–Chronicle Co. v. Pa. Human Relations Comm'n*, 672 A.2d 400 (Pa.Cmwlth.1996). The liberal rules of evidence relating to administrative agencies afford agencies broad discretion in admitting or excluding evidence, so the exclusion alone may not constitute a procedural defect. *Id.*

Contrary to D.Z.'s assertions, our review of the record here reveals the Hearing Officer did not exclude evidence concerning implementation of Student's GIEP generally, nor did he exclude evidence regarding Student's instructional level for reading comprehension, specifically.

Before the Hearing Officer, D.Z. attempted to challenge the implementation of Student's GIEP by challenging the level at which Student's teachers were instructing him. In support of her challenge, D.Z. pointed to a statement in Student's GIEP for his 3rd grade year that Student was to be instructed at his instructional level.

To put this challenge in context, we reiterate that, by operation of regulations, because the parties could not agree on a new GIEP after Student's GIEP for the 3rd grade year, that programming remained in place until the parties reached an agreement on a new GIEP or a hearing officer ordered a new GIEP. *See* 22 Pa. Code § 16.63(a).

A review of Student's GIEP for his 3rd grade year reveals that it identified Student's instructional level for reading comprehension as "grade 4." R.R. at 88a. Because Student's GIEP remained in place for his 4th grade year, the express provision within that document that identified Student's reading comprehension instructional level at "grade 4," also remained in place.

Through her questioning of the School District's witnesses, it appears D.Z. did not understand that the provisions of Student's GIEP for the 3rd grade year remained in place. Thus, in response to D.Z.'s repeated questions regarding Student's instructional level, the Hearing Officer explained (with emphasis added):

I note for the record that on page 3 of 6 [of Student's GIEP for the 3rd grade year], in the middle of the page *the GIEP ... states that [Student's] in-*

*structional level in reading is grade four. The witness has testified that she is instructing [Student] in the fourth grade level. So the GIEP and this witness' [sic] testimony would seem to address instruction at his instructional level.*

\* \* \*

The [G]IEP ... is the GIEP for [Student's] instruction. It does not matter how much you, or I, or the [S]chool [D]istrict, disagrees with [it]. It is [Student's] GIEP until you approve a new GIEP, or I order a new GIEP....

*But disagreeing with what is in this document is not an issue in this hearing. The only issue in this hearing is whether [Student's teacher] taught what was in this document or not. So please ask your questions about what she taught [Student].*

R.R. at 37a–38a.

The Hearing Officer's explanation is consistent with the language of the GIEP and the effect of applicable regulations. As such, we discern no abuse of discretion in the Hearing Officer's decision to limit D.Z.'s repeated questioning of witnesses on a point that was inconsistent with the express language of the GIEP.

In any event, the Hearing Officer himself elicited testimony from Student's 4th grade teacher concerning her instruction of Student in reading. In response to this questioning, Student's 4th grade teacher indicated the books she used in her instruction of Student were "in the fifth grade level range." R.R. at 34a. This witness also testified the books used in Student's "enrichment" reading instruction were on a "fifth to sixth grade level." *Id.; see also* R.R. at 39a–40a. Thus, contrary to D.Z.'s assertions that the Hearing Officer excluded evidence regarding Student's reading comprehension instruction level,

the Hearing Officer himself actually elicited relevant testimony on this issue. Therefore, D.Z.'s claim fails.

Moreover, *Duquesne Light Co. v. Workmen's Compensation Appeal Board (Kraft),* 53 Pa.Cmwlth. 92, 416 A.2d 651 (1980) and *Franklin Plastics Corp. v. Department of Environmental Resources,* 657 A.2d 100 (Pa.Cmwlth.1995), cited by D.Z. for the proposition that this Court reversed and remanded in cases where an administrative agency's exclusion of evidence denied a party the right to a full and fair hearing, are factually distinguishable and, therefore, do not compel a different here.

First, in *Duquesne Light,* this Court remanded a case where a workmen's compensation referee barred an employer from conducting reasonable cross-examination of witnesses on the issue of whether a claimant provided the employer timely notice of an alleged work-related condition, an issue which was critical to the employer's defense.

Next, in *Franklin Plastics,* we remanded a case to the Environmental Hearing Board where it improperly barred an entity, which the Department of Environmental Resources (DER) charged with various emissions violations, from eliciting, on cross-examination, crucial exculpatory evidence, which restricted its ability to challenge the testimony and evidence DER presented.

Here, unlike in *Duquesne Light* and *Franklin Plastics,* the Hearing Officer did not improperly limit cross-examination on a critical issue. To the contrary, the Hearing Officer permitted D.Z. to examine the School District's witnesses on relevant issues. The Hearing Officer did not abuse his discretion by limiting D.Z.'s repetitive questions on a point that was not directly relevant to the central the issue before him, which concerned the implementation

of Student's pendent GIEP. Further, the Hearing Officer himself elicited relevant testimony from Student's 4th grade teacher concerning her instruction of Student in reading. Thus, unlike in *Duquesne Light* and *Franklin Plastics,* we discern no reversible error.

Based on the foregoing, we affirm.

### ORDER

**AND NOW,** this 27th day of July, 2010, the order of Special Education Hearing Officer dated June 12, 2009, at ODR Case # 9508–08–09–AS, is **AFFIRMED.**

## DISSENTING OPINION BY Senior Judge KELLEY.

I respectfully dissent. The Majority's opinion ignores the plain statutory mandate at issue, finds waiver where none has been raised or equitably exists, and potentially eviscerates the statutory review scheme governing GIEPs without regard to the annual review rights of parents thereunder. The reasoning for my dissent in this case mirrors the reasoning for my dissent, on the same issues, as more fully set forth in *D.Z. v. Bethlehem Area School District (D.Z.I),* 2 A.3d 712 (Pa.Cmwlth. 2010).

To the extent that the Majority relies upon its prior reasoning on the issue of D.Z.'s purported waiver of any objection to the Hearing Officer's failure to properly place upon the record the mandatory statement of qualification pursuant to 2 Pa.C.S. § 563(b)(2), I reiterate that D.Z.'s repeated and persistent objections throughout the record to the interpreter's

qualifications and efficacy should be read as asserting the substance of such an objection, and no waiver should be found.

· Further, any finding of waiver requires address of D.Z.'s issues challenging the actual effectiveness of the interpreter at issue. That analysis should begin with an examination of the interpreter's legal qualifications, which are undisputedly insufficient as a matter of law in light of the Hearing Officer's failure to make the mandated record statement required in Section 563(b)(2).

Additionally, D.Z.'s repeated and clear insistence that she has not been heard as a result of the interpreter's ineffectiveness suffices as a showing of actual prejudice, given the fundamental nature of the due process violations alleged, and given the record's preservation of D.Z.'s objections on that basis throughout the entirety of the proceedings below. I can conceive of no more obvious and self-evident actual prejudice shown, in the context of a due process violation allegation, than a record replete with assertions that a party is literally not being heard. In my view, the actual prejudice embodied in not being properly interpreted to the Hearing Officer, in light of the use of statutorily unqualified interpreter, is so obvious as to require no official designation thereof within a brief to this Court, given the record to the matter *sub judice.*[1]

The Majority's application of the doctrine of *res judicata* to D.Z.'s challenges in this case is, in my view, errant, where neither the identity of the things sued upon, nor the identity of the cause of ac-

---

1. I also object to the Majority's conclusion that D.Z.'s perceived failure to show any actual prejudice in light of the Hearing Officer's failure to make the mandated record statement regarding the purported otherwise qualified interpreter renders the Hearing Officer's failure harmless error. Given the fundamen-

tal nature of the due process rights implicated herein—namely, and quite literally, the opportunity to be heard—a finding of harmless error serves to eviscerate the plain mandate of Section 563(b)(2), and by extension, eviscerates the very due process rights embodied by that Section as recognized by the Majority.

tion, is identical. The instant matter raises the issue of the appropriateness of Student's GIEP for the 4th grade year, whereas the prior GIEP—held over as pendant under Pennsylvania regulation in light of D.Z.'s challenge to the proposed and rejected 4th grade GIEP—addressed such appropriateness only for Student's 3rd grade year (notwithstanding the pendency issue as a practical matter, as mandated by regulation).

Further, District's action in this case, in withdrawing its parentally rejected proposed 4th grade GIEP in the wake of D.Z.'s challenge thereto, sharply illustrates the evisceration of the annual educational plan review scheme established by our General Assembly. Under the Majority's application of the *res judicata* doctrine herein, effectively rendering unassailable a pendant carryover education plan in subsequent years, a course of conduct by a district in which it annually withdraws any rejected proposed plan (especially in the later stages of a parent's challenge, as in this case) and relies upon the unassailability of a pendant plan under *res judicata* would enable a district to forever evade review of repeatedly rejected plan proposals indefinitely. Such a result is absurd, and at direct odds with the General Assembly's mandate for annual parental review rights.

Additionally, the very hypothetical I advanced in *D.Z.I* is present in this matter. Student's previously litigated educational plan included accelerated math instruction at a 4th grade level for Student's 3rd grade year. Rendering that plan design unassailable under *res judicata* leads to a result whereby the previously litigated plan, now used as a pendant carryover in subsequent challenged academic years, is unreviewable despite the express advanced design of 4th grade math instruction (for Student's 3rd grade) now applied to Stu-

dent's 4th, 5th, and potentially future academic years. The fact that the Majority (and the Hearing Officer) expressly note that Student received accelerated math instruction at a higher level in his current academic year (despite the pendant 3rd grade design as previously approved) is a happy equitable accident of the instant facts; had that instruction still been provided at the 3rd grade level as previously adjudicated, that clearly improperly designed instruction level would have been unassailable under the Majority's view.

I concur in the Majority's remaining analysis not addressed above.

I would vacate and remand for further proceedings, on the primary basis of the Hearing Officer's error as a matter of law in failing to place the statutorily mandated statement regarding otherwise qualified interpreters upon the record, as required by 2 Pa.C.S. § 563(2)(b).