Todd Nuttall,                                    :
                          Petitioner              :
                                                 :
        v.                                        :
                                                 :
City of Chester (Workers'                         :
Compensation Appeal Board),                       :        No. 37 C.D. 2022
                          Respondent              :        Submitted: February 24, 2023

BEFORE:    HONORABLE CHRISTINE FIZZANO CANNON, Judge
           HONORABLE ELLEN CEISLER, Judge
           HONORABLE LORI A. DUMAS, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON                          FILED: August 8, 2023

        Todd Nuttall (Claimant) petitions for review of the December 22, 2021 order of the Workers' Compensation Appeal Board (Board) affirming the decision and order of Workers' Compensation Judge Debra Bowers (WCJ Bowers) that denied two Petitions to Reinstate Compensation Benefits (collectively, Petitions) filed by Claimant against the City of Chester (Employer) pursuant to the Workers' Compensation Act (Act).[1]  Upon review, we affirm.

        This matter was previously before this Court on Claimant's appeal from the Board's affirmance of a different WCJ's (Previous WCJ) grant of Employer's Petition to Suspend Compensation Benefits.  *See Nuttall v. Workers' Comp. Appeal*

_____

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2710.

*Bd. (City of Chester)* (Pa. Cmwlth., No. 1428 C.D. 2019, filed May 4, 2020) (*Nuttall I*). We detailed at length the pertinent facts and procedural posture underlying the matter in that opinion as follows:

> On February 1, 2010, Claimant, a police officer for Employer, entered Employer's Deferred Retirement Option Plan (DROP) program, which Employer offers to allow police officers with at least 20 years of service to continue to work and be paid while also receiving pension benefits. In brief, while an officer participates in the DROP program, his or her pension benefits are deposited in a trust account to which the officer is entitled at the time of his actual retirement. This Court previously summarized Employer's DROP program, which is part of Employer's Police Pension Ordinance codified in Article 143 of Employer's Administrative Code, in *Massi v. City of Chester Aggregated Pension Board* (Pa. Cmwlth., No. 1635 C.D. 2017, filed July 17, 2018), wherein the Court explained:
>
> > Section 143.24 of the Ordinance outlines [Employer's] []DROP[] program, which is available to officers with at least 20 years of service. Under this program, an officer who is otherwise entitled to retire may enter the DROP program, continue to work and be paid by Employer while also receiving his pension benefits. These pension benefits are deposited into a trust account which an officer is then entitled to at the time of his actual retirement. To participate in the DROP program, officers "shall make an irrevocable commitment to separate from [Employer] service as a police officer and retire upon ceasing participation in the DROP, which they must do no later than five (5) years after entering the DROP." Ordinance Article 143.24(b). The Ordinance also provides that "[o]nce entering the DROP, the member continues

2

to be a DROP Participant until separation from [Employer] service as a police officer, at which point the member is deemed retired." Ordinance Article 143.24(j).

*Id.*, slip op. at 4-5. Claimant's DROP separation date was January 31, 2015. 2018 WCJ Decision dated July 30, 2018 (2018 WCJ Decision) at 4, Findings of Fact (F.F.) 8(b).

On March 27, 2014, Claimant suffered a work-related crush injury to his right foot that resulted in a resection surgery of the right fifth metatarsal bone and then a left cuboid bone blister from walking with an altered gait following the surgery. *See* 2018 WCJ Decision at 3, F.F. 5. Employer accepted the injury as compensable.[2] *See* 2018 WCJ Decision at 3, F.F. 5; *see also* Board Opinion dated September 18, 2019 (2019 Board Opinion) at 1.

> [2] Employer originally accepted the injury as a "crush injury" to Claimant's "right [fifth] proximal phalanx" on which Employer paid 22 weeks of compensation (16 weeks for the loss of the use of the right toe and a further 6 weeks for healing time) for "specific loss of right fifth proximal phalanx. *See* WCJ Decision dated December 21, 2015 (2015 WCJ Decision) at 3, F.F. 1. The injury description was revised as stated above on December 21, 2015, following Claimant's successful Review Petition. *See* 2018 WCJ Decision at 3, F.F. 5; *see also* 2015 WCJ Decision at 10.

On September 12, 2016, Employer filed a modification petition and a suspension petition, both of which alleged that Claimant has post-injury self-employment earnings for which it was entitled to a credit.[3] *See* 2018 WCJ Decision at 3, F.F. 1; *see also* Modification Petition dated September 12, 2016; Suspension Petition dated September 12, 2016.[4] At an October 11, 2017 hearing on these petitions, Employer amended the petitions to include a

3

claim that Claimant voluntarily withdrew from the work force as a result of his participation in the DROP program, and a further allegation that it was entitled to a credit regarding its contribution to Claimant's pension fund. *See* 2018 WCJ Decision at 3, F.F. 3; *see also* 2019 Board Opinion at 1-2. The original Modification and Suspension Petitions, together with the amended petitions, are referred to collectively herein as the Suspension Petition.[5]

[3] Previously, Claimant had filed a Petition for Review seeking a revised description of the injury description and a Penalty Petition alleging Employer had failed to properly mail indemnity checks to Claimant. *See* 2015 WCJ Decision. On December 21, 2015, a workers' compensation judge granted the Petition for Review and dismissed the Penalty Petition. *See id.* at 10. Thereafter, Employer filed a Termination Petition alleging Claimant had fully recovered from his work injury as of February 10, 2016, which a different workers' compensation judge denied and dismissed by decision rendered March 24, 2017. *See* WCJ Decision dated March 24, 2017.

[4] Employer filed another combined Modification/Suspension Petition on December 13, 2016, again alleging its entitlement to a credit based on Claimant's post-injury self-employment. *See* 2018 WCJ Decision at 3, F.F. 2; *see also* Modification/Suspension Petition dated December 13, 2016.

[5] Claimant had also filed a Penalty Petition on June 2, 2017, and a Modification Petition on June 22, 2017, both of which were withdrawn at the October 11, 2017 hearing on Employer's Modification and Suspension Petitions. *See* 2018 WCJ Decision at 3, F.F. 4; *see also* Penalty Petition dated June 2, 2017; Modification Petition dated June 22, 2017.

4

On July 30, 2018, the WCJ issued a decision that determined Employer had met its burden of proving that Claimant had voluntarily withdrawn from the work force as of his DROP retirement date of January 31, 2015. *See* 2018 WCJ Decision at 8-9, F.F. 16 & Conclusion of Law (C.L.) 3; *see also* 2019 Board Opinion at 2. The WCJ found that, while Claimant did suffer a work injury in 2014, he did not retire in 2015 as a result of this injury. *Id.* Instead, the WCJ specifically found that the evidence established that Claimant retired in January 2015 as a result of his participation in the DROP program. *Id.* Additionally, the WCJ determined that Employer was entitled to a credit for the 28.7% contribution it had made to Claimant's pension fund. *See* 2018 WCJ Decision at 8-9, F.F. 17 & C.L. 4; *see also* 2019 Board Opinion at 2. Accordingly, the WCJ granted the Suspension Petition in part[6] based on Claimant's voluntary withdrawal from the work force and suspended Claimant's benefits as of January 31, 2015. *See* 2018 WCJ Decision at 10, Order; *see also* 2019 Board Opinion at 2. The WCJ determined the remainder of the claims of the Suspension Petition, including the pension credit, were moot. *Id.* Claimant appealed the WCJ's rulings, and the Board affirmed by opinion dated September 18, 2019. *See generally* 2019 Board Opinion. Claimant timely petitioned this Court for review.

[6] The WCJ determined that Employer had failed to meet its burden of proving an entitlement to a suspension or modification of Claimant's benefits based on income allegedly earned by Claimant from Widener University between the date he began receiving workers' compensation benefits and January 31, 2015. *See* 2018 WCJ Decision at 8, C.L. 2.

*Nuttall I*, slip op. at 1-5 (footnote 7 omitted).

On appeal, this Court affirmed the Board, determining that the objective facts presented in *Nuttall I* represented substantial evidence to support the Previous WCJ's determination that Claimant had voluntarily retired from the work force and the Board's affirmance thereof. *See Nuttall I*, slip op. at 5-10. Claimant did not request reconsideration or petition the Supreme Court for allowance of appeal.

On July 29, 2020, Claimant filed the instant Petitions, alleging that Claimant experienced a worsening of his condition as of December 21, 2015, relative to the March 27, 2014 work injury that was the subject of *Nuttall I*, and seeking a reinstatement of Claimant's benefits.[2] *See* Board Opinion mailed Dec. 22, 2021 (Board Opinion) at 3-4; *see also* Petitions, Certified Record (C.R.) at 39-44. Employer filed answers denying the claims of the Petitions and asserting the affirmative defenses of res judicata and collateral estoppel based on the determination in *Nuttall I* that Claimant had voluntarily retired from the work force. *See* Board Opinion at 4; *see also* Answers to Petitions, C.R. at 45-49. On September 2, 2020, Employer also filed a Motion to Dismiss Claimant's Reinstatement Petitions (Motion to Dismiss) in which Employer argued that Claimant was barred from requesting reinstatement of benefits where the Previous WCJ determined in *Nuttall I* that Claimant had voluntarily removed himself from the work force by entering Employer's DROP program on February 1, 2010, and retiring as of January 31, 2015, in accordance with the terms of the DROP program. *See* Board Opinion at 4; *see also* Motion to Dismiss, C.R. at 50-57.

---

[2] The first of the Petitions seeks a reinstatement of benefits as of December 21, 2015, and the second of the Petitions seeks a reinstatement of benefits as of January 26, 2017. *See* Petitions, Certified Record (C.R.) at 39a & 42a.

6

WCJ Bowers dismissed the Petitions by Decision and Order mailed April 15, 2021 (WCJ Bowers Decision).[3]  *See* Board Opinion at 4; *see also* WCJ Decision.  WCJ Bowers determined that the Petitions are barred by the doctrine of res judicata, explaining that

> [t]he issue of Claimant's disability was ruled upon by [the Previous WCJ] via Decision circulated July 30, 2018, the record having closed on January 8, 2018.  All issues concerning Claimant's disability during that time the record was open should have been raised during this litigation.  Claimant's assertion that his condition worsened effective December 31, 2015[,] should have been raised during this litigation and is therefore precluded.

WCJ Bowers Decision at 4.  Claimant appealed to the Board, which affirmed the WCJ Bowers Decision by opinion mailed December 22, 2021 (Board Decision), determining that Claimant's assertion that his condition had worsened was barred by the doctrine of collateral estoppel.  *See* Board Decision at 5-7.  Claimant timely appealed to this Court.

On review before this Court,[4] Claimant argues that the Board erred by affirming the WCJ Bowers Decision that dismissed the Petitions on the basis of res judicata.  *See* Claimant's Br. at 4, 10-19.  We disagree.

---

[3] After the filing of the Motion to Dismiss, WCJ Bowers conducted two brief hearings at which no evidence was taken, but counsel gave their positions on the implications of the determination in *Nuttall I* that Claimant had previously voluntarily removed himself from the work force by participating in Employer's DROP program.  *See* Notes of Testimony, September 3, 2020, Reproduced Record (R.R.) at 58a-68a; Notes of Testimony, December 3, 2020, R.R. at 69a-79a.

[4] Our scope of review in a workers' compensation appeal is limited to determining whether necessary findings of fact are supported by substantial evidence, whether an error of law was

7

Initially, we observe that "[t]echnical res judicata and collateral estoppel are both encompassed within the parent doctrine of res judicata, which 'prevents the relitigation of claims and issues in subsequent proceedings.'" *Bd. of Supervisors of Willistown Twp. v. Main Line Gardens, Inc.*, 184 A.3d 615, 625 (Pa. Cmwlth.), *appeal denied*, 196 A.3d 614 (Pa. 2018) (quoting *Weney v. Workers' Comp. Appeal Bd. (Mac Sprinkler Sys., Inc.)*, 960 A.2d 949, 954 (Pa. Cmwlth. 2008)).[5]  Technical res judicata, or claim preclusion, "provides that when a final judgment on the merits exists, a future suit between the parties on the same cause of action is precluded." *Henion v. Workers' Comp. Appeal Bd. (Firpo & Sons, Inc.)*, 776 A.2d 362, 365 (Pa. Cmwlth. 2001).  In such cases, a party is prohibited from asserting claims that were raised or that could have been raised in the previous adjudication. *Wilkes ex rel. Mason v. Phoenix Home Life Mut. Ins. Co.*, 902 A.2d 366, 376 (Pa. 2006) (internal citation omitted); *see also Henion*, 776 A.2d at 365-66 (noting that the doctrine of res judicata "applies to claims that were actually litigated as well as those matters that should have been litigated").  Technical res judicata operates to preclude a claim where both the previous action and the present action involve: (1) identity of the thing sued upon or for; (2) identity of the cause of action; (3) identity of the persons and parties to the action; and (4) identity of the quality or capacity of the parties suing or sued. *Henion*, 776 A.2d at 365-66.  "Generally, causes of action are identical when the subject matter and the ultimate issues are the same in both the old and the new proceedings." *Id.*

---

committed, or whether constitutional rights were violated. *Henderson v. WP Ventures, Inc. (Workers' Comp. Appeal Bd.)*, 269 A.3d 1272, 1275 n.2 (Pa. Cmwlth. 2022).

[5] Res judicata applies to administrative agency determinations. *D.Z. v. Bethlehem Area Sch. Dist.*, 2 A.3d 742, 749 (Pa. Cmwlth. 2010) (citing *Hall v. Pa. Bd. of Prob. & Parole*, 733 A.2d 19 (Pa. Cmwlth. 1999)).

"A claimant seeking reinstatement of benefits must establish that the reasons for the suspension no longer exist." *Pucci v. Workers' Comp. Appeal Bd. (Woodville State Hosp.)*, 707 A.2d 646, 648 (Pa. Cmwlth. 1998). "The claimant must prove that the disability which gave rise to his original claim continues and that, through no fault of his own, his earning power is again adversely affected by his work-related injury." *Id.* Additionally, where a claimant files a reinstatement petition in a matter where prior litigation determined that he was not due benefits by virtue of having voluntarily retired, the burden is on the claimant to prove that his loss of earning power is no longer due to his voluntary retirement. *See id.* (affirming the Board's denial of a claimant's second reinstatement petition where the Board had determined in previous litigation that the claimant had suffered no loss of earning power due to a work injury where the claimant had already voluntarily removed himself from the work force).

Here, the Board found that WCJ Bowers did not err by determining that res judicata precludes Claimant's assertion that his condition worsened as of December 21, 2015. *See* Board Decision at 5-6. The Board explained that

> [d]uring the litigation proceedings before [the Previous WCJ], Claimant had ample opportunity to present evidence that his March 27, 2014[] work injury resulted in a disability taking him out of the work force. Any argument that Claimant's work-related disability took him out of the work force involved the same subject matter and issues as were before [the Previous WCJ] and should have been raised at that proceeding. However, Claimant failed to raise that argument at any time during those proceedings. Instead, [the Previous WCJ] noted that, in addition to accepting a pension, Claimant had testified in the termination petition litigation that he did not feel he was totally disabled, and that he had not applied for any work. This Board and the Commonwealth Court affirmed

9

> [the Previous WCJ's] finding that Claimant had voluntarily withdrawn from the work[ ]force. Where Claimant failed to prove that he was forced to remove himself from the entire labor market in the prior proceeding before [the Previous WCJ], he is estopped from arguing the same in the instant reinstatement proceeding.

Board Decision at 6 (internal citations omitted).

We agree with the Board's determination. Res judicata applies to this matter and precludes Claimant from relitigating the prior determination that his loss of earning power was due to his voluntary retirement. Claimant had ample opportunity to present evidence that his condition had worsened and that such worsening, rather than his voluntary retirement, was the cause of his loss of earning power during the course of prosecution of the petitions underlying *Nuttall I*. *See Wilkes*; *Henion*; *Pucci*. The Board did not err by affirming the WCJ Bowers Decision disallowing Claimant a second opportunity to do so through the instant Petitions.

For the above reasons, the Board Decision is affirmed.


_____
CHRISTINE FIZZANO CANNON, Judge

10

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Todd Nuttall,                          :
                    Petitioner        :
                                       :
          v.                           :
                                       :
City of Chester (Workers'              :
Compensation Appeal Board),            :     No. 37 C.D. 2022
                    Respondent         :

# O R D E R

AND NOW, this 8th day of August, 2023, the December 22, 2021 order of the Workers' Compensation Appeal Board is AFFIRMED.

_____
CHRISTINE FIZZANO CANNON, Judge