IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pike County Child   :
Welfare Service,   : No. 2077 C.D. 2015
  : Submitted: March 24, 2016
     Petitioner   :
  :
    v.   :
  :
State Civil Service   :
Commission (Soto),   :
  :
     Respondent   :


BEFORE:  HONORABLE MARY HANNAH LEAVITT, President Judge
     HONORABLE ANNE E. COVEY, Judge
     HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge


OPINION BY SENIOR JUDGE FRIEDMAN     FILED: July 14, 2016


    Pike County Child Welfare Service (Appointing Authority) petitions for review of the State Civil Service Commission's (Commission) September 30, 2015, order, directing the Appointing Authority to reduce the disciplinary action imposed on Shenequa S. Soto from a termination to a written reprimand for the four legitimate bases for discipline. The Commission also ordered the Appointing Authority to amend its records to reflect the written reprimand and reimburse Soto such wages and emoluments due between November 12, 2014, and her reinstatement, less any wages earned and benefits received. We affirm.

    Soto worked for the Appointing Authority as a "Homemaker (Local Government)" (Homemaker) from December 2008 until November 12, 2014, when the Appointing Authority terminated Soto for violating the Pike County Employee's

Manual (Manual). (Commission's Findings of Fact, Nos. 1, 3.) Soto appealed to the Commission, challenging her removal and alleging discrimination and retaliation for filing a workers' compensation claim in connection with a work injury sustained on August 13, 2014.

On April 14, 2015, the Commission held a public hearing pursuant to sections 951(a) and (b) of the Civil Service Act (Act),[1] at which Soto and the Appointing Authority appeared and presented testimony and evidence. (*Id.*, No. 2.) The Commission found that, as a Homemaker, Soto transported clients, supervised visits, inspected homes, and provided budgeting and parenting resources. (*Id.*, No. 4.)

Soto received a copy of the Manual, which provides:

> ALL ACCIDENTS, INJURIES, OR FIRES, REGARDLESS OF HOW SLIGHT, MUST BE REPORTED IN WRITING TO THE EMPLOYEES' DEPARTMENT HEAD AND COPIED TO THE COUNTY COMMISSIONERS' OFFICE. Such reports are required by law and are necessary to insure that such injuries are properly treated. It is also necessary that an investigation be made to determine corrective action to avoid similar accidents.

(Manual at 28.) The Manual's disciplinary policy states:

> Some examples of behavior that constitute unacceptable conduct which may lead to disciplinary action include, but are not limited to, the following:

---

[1] Act of August 5, 1941, P.L. 752, *as amended*, 71 P.S. §741.951(a) and (b), added by Section 27 of the Act of August 27, 1963, P.L. 1257.

* * *

g. Violation of safety, production, or other operating rules including the failure to report any accident involving [Pike] County personnel or property within 24 hours of the accident's occurrence.

(*Id.* at 32.)

Soto received performance evaluations that were either "satisfactory" or "commendable" on either a bi-annual or annual basis. (Commission's Findings of Fact, Nos. 5-8, 13, 15.) Shannon Wisniewski has been the Appointing Authority's director since April 28, 2014. (*Id.*, No. 18.)

Between 2011 and 2013, Soto received three employee-warning reports: the first, on December 15, 2011, for making an unannounced visit to a client's home; the second, on April 13, 2012, for being insubordinate, screaming at her supervisor, and misusing county time and a county-owned vehicle; and the third, on September 10, 2013, for posting comments on Facebook about a coworker, which created a hostile work environment. (*Id.*, Nos. 9, 11-12, 14.)

On March 24, 2014, Soto received a verbal warning for failing to notify her supervisor that she was taking a late lunch. (*Id.*, No. 16.) On April 14, 2014, Soto's supervisor discussed Soto's lack of respect with her. (*Id.*, No. 17.) On July 24, 2014, Soto was transporting two child clients to a visit when she backed the county vehicle into a pole. Soto did not immediately report the incident to Wisniewski but waited until after the visit. At that time, Wisniewski instructed Soto to immediately notify Wisniewski or Soto's supervisor of any further incidents with a

3

county vehicle. Soto completed the incident report on the date of the incident. (*Id.*, Nos. 19-20.)

On August 13, 2014, Soto was again transporting the same two child clients to a visit when another Homemaker's child client head-butted Soto. Soto did not immediately report the incident because she did not feel any ill effects. While Soto was transporting the clients back home, Soto's head began to ache, so she telephoned an Appointing Authority caseworker, Jennifer D'Argenio, asking her to finish taking the clients home. Soto did not notify Wisniewski or her supervisor. Soto planned to drive the clients to the Appointing Authority for D'Argenio to take home. However, Soto's headache worsened, and she had to pull off of the road. Soto dialed D'Argenio's telephone number and handed the phone to one of the clients. Soto then passed out, and the client told D'Argenio what had happened. (*Id.*, Nos. 21-25.)

D'Argenio notified Wisniewski and her supervisor about Soto's situation and went with another caseworker to aid Soto. Upon arrival, Soto was incoherent so the caseworker dialed 911. Wisniewski arrived shortly after the ambulance. Soto was transported to the emergency room at Bon Secours Health System, Inc., was treated for a head injury, and was released. Soto was given a doctor's note excusing her from work for three days. Soto gave the note to D'Argenio to give to Wisniewski. Soto also texted Wisniewski, informing Wisniewski that she would be off work for three days. (*Id.*, Nos. 26-27.)

4

On August 13, 2014, Soto completed an incident report regarding the head-butting. Wisniewski completed an incident report dated August 13 and 14, 2014, and attached a text message from Soto asking if she should put in a workers' compensation claim, to which Wisniewski replied, "I'm guessing so. I'll clarify tomorrow." D'Argenio completed an incident report dated August 14, 2014. (*Id.*, Nos. 30-32.)

On August 18, 2014, Soto submitted a claim for workers' compensation benefits due to a "slight concussion" incurred on August 13, 2014, from a client head-butting her. On August 25, 2014, the Appointing Authority's insurer denied Soto's claim, stating that Soto did not suffer a work-related injury. (*Id.*, Nos. 37-38.)

On August 28, 2014, Wisniewski issued Soto an employee-warning report, indicating that Soto violated the prohibition against gifts and special privileges when she accepted a dog from an Emergency Certified Kinship Resource parent (foster parent). The foster parent was selling the dog, but Soto did not pay for the dog. (*Id.*, Nos. 40-41.)

On September 8, 2014, Wisniewski issued Soto an employee-warning report, indicating that on September 2, 2014, Soto misused work resources when Soto printed a 161-page document at the Appointing Authority's office, which was unrelated to her job. Also on September 8, 2014, Wisniewski issued Soto an employee-warning report, indicating that Soto failed to immediately notify a supervisor or director about the August 13, 2014, incident. The report stated that Soto contacted D'Argenio 30 minutes after the incident occurred. By letter dated

5

September 8, 2014, Wisniewski offered Soto the opportunity to reply in writing to the three employee-warning reports. Soto did not reply. (*Id.*, Nos. 43-45.)

On September 17, 2014, Soto notified the Appointing Authority's insurance carrier and the Pike County Commissioners (PCC) that she was appealing the denial of her workers' compensation claim. On September 28, 2014, the Appointing Authority notified Soto by letter that she was approved for leave under the Family and Medical Leave Act (FMLA)[2] from August 13, 2014, through October 6, 2014. Soto was on FMLA leave from August 13, 2014, through October 14, 2014. (*Id.*, Nos. 35-36, 46.)

On October 14, 2014, Soto returned to light-duty work with the Appointing Authority. Soto did not want to drive and was experiencing short-term memory loss and headaches. Wisniewski instructed Soto to move her desk to the front of the office to help with clerical duties because she could not yet perform Homemaker duties. (*Id.*, Nos. 46-47.)

By letter dated October 15, 2014, Wisniewski asked Soto's doctor to confirm Soto's work restrictions. Soto's doctor responded that Soto could drive but could not lift, pull, or push more than 25 pounds. (*Id.*, No. 48.)

On October 16, 2014, Wisniewski issued Soto an employee-warning report, indicating that Soto had not moved her desk as requested. After receiving the employee-warning report, Soto moved her desk. (*Id.*, Nos. 49-50.) Also on October

_____

[2] 29 U.S.C. §§2601-2654.

6

16, 2014, Soto's supervisor issued Soto an employee-warning report, indicating that Soto and D'Argenio left for lunch at 12:40 p.m. and returned at 2:00 p.m., in violation of the 30-minute lunchbreak rule. (*Id.*, No. 51.)

On November 12, 2014, the PCC held a hearing regarding Soto's August 28, September 8, and October 16, 2014, employee-warning reports. Wisniewski opined that receiving the gift, getting in the car with clients when she was not feeling well, and not immediately contacting the Appointing Authority were the most serious of Soto's violations. Wisniewski recommended that Soto be terminated. Wisniewski did not participate in the PCC's deliberations, and the PCC made the final decision to terminate Soto. (*Id.*, Nos. 52-54.)

Soto appealed her termination to the Commission which determined that PCC discharged Soto for "violat[ing] the employee manual," (PCC Removal Letter, 11/12/14, at 1), and that the PCC removed Soto solely because of the safety violation regarding the transportation of the two child clients. The Commission found:

> [Soto's] actions related to her injury and backing the county vehicle into a pole did not violate the . . . Manual. There is no dispute that [Soto] completed Incident Reports about both incidents within the 24 hours required by the Manual. Also, while [Soto] did not comply with Wisniewski's instruction and immediately notify her or the supervisor about her injury, she nevertheless complied with the Manual by timely completing an Incident Report.
>
> The Commission is not persuaded that [Soto] created a "safety issue" by how she handled the effects of her injury. Contrary to [Matthew] Osterberg's testimony, [Soto] credibly testified that she felt "fine" immediately after the child head[-]butted her, and began to feel unable to drive only after she started driving her clients home. [Soto]

7

had been hit, kicked, and bitten by child clients; it is not reasonable to expect her to anticipate that this time her injury would cause her to pass out. Once [Soto] realized that she was unable to drive, she contacted D'Argenio and pulled off the road. All in all, the Commission is persuaded that under the circumstances, [Soto] acted reasonably and with due regard for her child clients' safety.

Based on the foregoing, the Commission concludes that the [Authority] did not meet its burden to show that [Soto's] backing the county vehicle into a pole or how she handled the head[-]butting incident provided a legitimate basis for discipline.

(Commission's Op. at 25-26 (internal citations omitted).)

Because the Appointing Authority removed Soto from employment solely due to how she transported her child clients and because the Commission found that such actions did not merit any discipline, the Commission determined that the Appointing Authority failed to present evidence establishing just cause for Soto's termination under section 807 of the Act, 71 P.S. §741.807. The Commission, however, determined that the Appointing Authority proved that Soto should be disciplined for accepting a gift, using office equipment for non-work-related reasons, refusing to move her desk, and returning late from lunch. Thus, the Commission modified Soto's discipline to a written reprimand for those four violations.

Next, the Commission addressed Soto's contention that the Appointing Authority's decision to terminate her was motivated by discrimination related to her claim for workers' compensation benefits. Soto asserted that she only received three employee-warning reports in the six years she was employed by the Appointing Authority, but in the two months after filing her workers' compensation claim, she

8

received five employee-warning reports and was ultimately terminated on November 12, 2014. Soto further argued that she was treated differently from D'Argenio because she filed the workers' compensation claim. D'Argenio was not terminated but was given 90 days' probation, even though she had more employee-warning reports than Soto.[3] (Commission's Op. at 31-32.)

The Commission determined that Soto met her burden of establishing a *prima facie* case of discrimination. (*Id.* at 33.) The Commission further found that the Appointing Authority failed to offer a legitimate, nondiscriminatory reason for Soto's removal and, therefore, determined that the Commission's removal of Soto from her position with the Appointing Authority was discriminatory. (*Id.* at 33-36.)

The Commission ordered the Appointing Authority to reduce Soto's discipline from termination to a written reprimand for the four legitimate bases for discipline, reinstate Soto, and reimburse Soto for lost wages and benefits. The Appointing Authority now petitions this court for review.[4]

---

[3] D'Argenio testified that she received three employee-warning reports between August 13 and October 16, 2014. She further stated that although her pre-disciplinary hearing with the PCC was primarily about the three employee-warning reports, they also discussed her receipt of 16 employee-warning reports in 8 years. (Commission's Op. at 32.)

[4] Our review is limited to determining whether the Commission has violated constitutional provisions or committed an error of law and whether its findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. §704. Whether a civil service employee's actions constitute just cause for removal is a question of law reviewable by this court. *Pennsylvania Board of Probation and Parole v. State Civil Service Commission (Manson)*, 4 A.3d 1106, 1112 (Pa. Cmwlth. 2010).

9

Initially, the Appointing Authority contends that the Commission erred in reducing Soto's termination to a written reprimand for the four bases for discipline. We disagree.

Section 807 of the Act states that "[n]o regular employe in the classified service shall be removed except for just cause." 71 P.S. §741.807. The Appointing Authority bears the burden of proving just cause and the substance of the charges underlying the employee's removal. *Long v. Pennsylvania Liquor Control Board*, 535 A.2d 1233, 1235 (Pa. Cmwlth. 1988). To prove just cause, the Appointing Authority:

> must demonstrate that the actions resulting in the removal are related to an employee's job performance and touch in some rational and logical manner upon the employee's competence and ability. What constitutes ample just cause for removal is largely a matter of discretion on the part of the head of the department. However, to be sufficient, the cause should be personal to the employee and such as to render the employee unfit for his or her position, thus making dismissal justifiable and for the good of the service.

*Pennsylvania Board of Probation and Parole v. State Civil Service Commission (Manson)*, 4 A.3d 1106, 1112 (Pa. Cmwlth. 2010) (internal citations omitted).

Here, Soto was terminated for "violat[ing] the [Manual]." (PCC Removal Letter, 11/12/14, at 1.) Before the Commission, Osterberg testified that the sole reason for Soto's removal was "the safety issue with those two children." (N.T., 4/14/15, at 169-71, 174.) The Commission found that the PCC failed to prove that Soto violated the Manual or acted inappropriately during the incident with the children. In fact, the Commission determined that "under the circumstances, [Soto]

10

acted reasonably and with due regard for her child clients' safety." (Commission's Op. at 26.) "The Commission is the sole fact finder in civil service cases and has exclusive authority to assess witness credibility and resolve evidentiary conflicts." *Manson*, 4 A.3d at 1113. The Commission credited Soto's testimony and correctly concluded that the evidence presented by the PCC was insufficient to establish just cause for terminating Soto for the incidents involving the child clients. (Commission's Op. at 26.)

Pursuant to section 952(c) of the Act, 71 P.S. §741.952(c), the Commission has the discretion to modify or set aside a disciplinary action of the Appointing Authority and, where appropriate, order reinstatement with or without payment of salary or lost wages. The Commission properly invoked its authority to modify the PCC's disciplinary action against Soto from a termination to a written reprimand with reimbursement of wages and emoluments.

Next, the Appointing Authority contends that the Commission erred in determining that Soto presented a *prima facie* case of discrimination and in determining that the Appointing Authority did not advance a legitimate, nondiscriminatory reason for Soto's removal. We disagree.

Section 905a of the Act[5] provides:

> No officer or employe of the Commonwealth shall discriminate against any person in recruitment, examination, appointment, training, promotion, retention or any other personnel action with respect to the classified

---

[5] Added by the Act of August 27, 1963, P.L. 1257.

11

service because of political or religious opinions or affiliations because of labor union affiliations or because of race, national origin or other non-merit factors.

71 P.S. §741.905a.

"When an aggrieved party alleges discrimination, the party bears the burden of proof . . . and is required to allege with specificity the basis underlying the claim of discrimination." *Craig v. State Civil Service Commission*, 800 A.2d 364, 365 (Pa. Cmwlth. 2002). "[M]ere general and conclusory allegations of discrimination are not adequate. There must be specific factual allegations of discrimination . . . ." *Allen v. State Civil Service Commission*, 992 A.2d 924, 929 (Pa. Cmwlth. 2010).

The decision in *Craig* contrasts conclusory and sufficiently specific allegations. 800 A.2d at 365-66. In *Craig*, the employee "marked boxes stating 'race,' 'sex,' and 'disability' as the types of alleged discrimination." *Id.* at 365. Regarding sexual discrimination, the employee stated in the appeal form "Robert Robinson is believed to be [a] [h]omosexual who sought discrete bribery tactics against male workers!" *Id.* at 366. This court found this statement to be legally insufficient to state a claim of sexual discrimination. *Id.* However, addressing race discrimination, the employee noted a high rate of minority discharges, an unequal distribution of work among employees, and named three people that discriminated against him. *Id.* This court found the racial discrimination claim to be sufficiently specific and remanded for a hearing on the matter. *Id.*

12

Here, Soto's claim is sufficiently specific pursuant to 4 Pa. Code §105.12(c).[6] Soto set forth that she was terminated due to filing a workers' compensation claim, that Wisniewski gave Soto five disciplinary reports after Soto filed the claim, that Soto only had three disciplinary reports in the prior six years she worked at the Appointing Authority, and that Soto was terminated and D'Argenio was given a suspension for the same or similar conduct, while D'Argenio had more disciplinary reports than Soto but had not filed a workers' compensation claim. Thus, Soto presented a *prima facie* case of discrimination.

The burden then shifted to the Appointing Authority to prove a legitimate, nondiscriminatory reason for terminating Soto. *Henderson v. Office of the Budget*, 560 A.2d 859, 864 (Pa. Cmwlth. 1989). The Appointing Authority set forth that it is not involved in the decision to grant or deny workers' compensation benefits, that D'Argenio's disciplinary reports were insignificant and did not warrant dismissal, and that Soto's disciplinary reports were significant because they related to the safety of the child clients.

The Commission determined that the Appointing "[A]uthority did not substantiate its reason for removing [Soto], i.e., that she transported her child clients unsafely. But also, the reasons that Osterberg and Wisniewski offered for removing [Soto], but not D'Argenio, do not establish that [Soto] was removed for legitimate, nondiscriminatory reasons." (Commission's Op. at 35.) We agree with the

---

[6] In accordance with 4 Pa. Code §105.12(c), an allegation of discrimination should include: "(1) The acts complained of[;] (2) How the treatment differs from treatment of others similarly situated[;] (3) When the acts occurred[; and] (4) When and how the appellant first became aware of the alleged discrimination."

Commission that the Appointing Authority failed to set forth a legitimate, nondiscriminatory reason for terminating Soto.

Accordingly, we affirm.

_____
ROCHELLE S. FRIEDMAN, Senior Judge

14

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pike County Child       :
Welfare Service,        : No. 2077 C.D. 2015
               :
       Petitioner  :
               :
      v.      :
               :
State Civil Service       :
Commission (Soto),       :
               :
       Respondent :

O R D E R

AND NOW, this 14th day of July, 2016, we hereby affirm the September 30, 2015, order of the State Civil Service Commission.

_____
ROCHELLE S. FRIEDMAN, Senior Judge