IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Derrick D. Crago, : 
          Petitioner : 
           : 
      v. : No. 617 C.D. 2018
           : SUBMITTED: August 31, 2018
State Civil Service Commission : 
(Department of Human Services), : 
          Respondent : 

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
              HONORABLE RENÉE COHN JUBELIRER, Judge
              HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                         FILED: November 15, 2018

Derrick Crago, Esquire, (Petitioner) petitions *pro se* for review of the March 30, 2018 order of the State Civil Service Commission (Commission), which affirmed his removal from the position of attorney examiner with the Bureau of Hearings and Appeals (BHA), Department of Human Services (Department).

## Background

Petitioner was employed as an attorney examiner with the Department from May 2013 until February 3, 2017. Notes of Testimony (N.T.), 6/5/17, at 27, Ex. No. A. His duties consisted of adjudicating formal appeals related to issues such as child abuse and medical neglect. *Id.* at 24-25. Petitioner also conducted recipient appeals related to benefits such as medical assistance and food stamps. *Id.* at 26. Attorney examiners were scheduled to conduct three to four formal hearings per week in the morning. *Id.* at 94. Rescheduled hearings took place in the afternoons. *Id.* If an attorney examiner had no afternoon hearings, that time was used to adjudicate cases.

*Id.* All attorney examiners had one day each week to work on adjudications. *Id.* Formal appeals were considered more complex matters, requiring more time to hear and adjudicate, as opposed to "recipient" appeals, which were considered "high volume." *Id.*

After the first few years of Petitioner's employment, in May 2015, a work plan was devised for Petitioner to assist him with his increasing backlog of unadjudicated matters. N.T., 6/5/17, Ex. No. AA-7, at 4. Thereafter, Petitioner was subject to multiple disciplinary actions related to unsatisfactory performance of his job duties and failure to adjudicate his assigned cases. He received an oral reprimand on October 22, 2015, followed by a written reprimand on January 8, 2016. *Id.*, Ex. No. A, at 1. On March 29, 2016, Petitioner received a level one alternative discipline in lieu of suspension (ADLS 1). *Id.* Petitioner received a level two alternative discipline in lieu of suspension with final warning (ADLS 2) on July 7, 2016. *Id.* The ADLS 2 was repeated on September 14, 2016, and a revised work plan was implemented. *Id.*

The September 2016 work plan established a schedule for Petitioner to adjudicate his backlogged cases. N.T., 6/5/17, Ex. No. AA-5. At that time, Petitioner had 23 delinquent cases. *Id.*, Ex. No. AA-5, at 2. Petitioner was to submit approximately four draft adjudications per week for supervisory review until the backlog was eliminated. *Id.*, Ex. No. AA-5, at 3-4. All backlogged matters were to be adjudicated before October 14, 2016. *Id.*, Ex. No. AA-5, at 3. *Petitioner* proposed the dates upon which drafts were to be submitted and he signed the revised work plan on September 20, 2016. *Id.*, Ex. No. AA-5, at 3-4.

On September 30, 2016, Francine Stone, Regional Manager for the Department, emailed Petitioner a list of his backlogged matters with a status update.

N.T., 6/5/17, Ex. No. AA-2. Of the 12 cases scheduled for adjudication prior to September 30, 2016, Petitioner had submitted 5 draft decisions. *Id.* Petitioner replied to this email on October 12, 2016. *Id.* He did not challenge Ms. Stone's assessment of his backlog, but indicated he was available to meet with her "anytime." *Id.*

On October 18, 2016, Petitioner submitted his *own* proposed work plan. N.T., 6/5/17, Ex. No. AA-3. At that time, Petitioner had 12 open matters remaining from his original backlog of 23. *Id.*, Ex. No. AA-3, at 2-3. This proposed work plan contemplated Petitioner adjudicating between two and four backlogged matters per week, with an anticipated elimination of the backlog by November 13, 2016. *Id.* Subsequently, a work plan meeting took place on October 26, 2016. *Id.*, Ex. No. AA-4. Present at the meeting were Petitioner, Tracy Henry, BHA Director for the Department, Marlene Brown, a Department Program Administrator, and Ms. Stone. *Id.* Ms. Henry advised Petitioner that the ADLS 2 was being repeated because it was not clear to her that Petitioner understood the requirements of the September 2016 work plan. *Id.* Consequently, the work plan was modified (October 2016 work plan) and Petitioner was given additional time to clear the backlog. *Id.*, Ex. No. AA-5, at 5. Petitioner was tasked with adjudicating two cases from his backlog each week, with the expectation that Petitioner's backlog would be eliminated by December 16, 2016. *Id.* For the week that included Veterans Day, Petitioner was only required to adjudicate one backlogged case. N.T., 6/5/17, at 40. During the week of Thanksgiving, he was not required to adjudicate any backlogged cases. N.T., 6/5/17, Ex. No. AA-5, at 5. The October 2016 work plan was signed by Petitioner and Ms. Stone on October 27, 2016. *Id.* at 6.

Petitioner received an Employee Performance Review (EPR) dated December 21, 2016, which covered the period of September 20, 2016 through December 9, 2016. N.T., 6/5/17, Ex. No. AA-7. Petitioner was rated Satisfactory in his EPR for Job Knowledge and Interpersonal Relations. *Id.* at 2-3. He received Needs Improvement for communication, and Ms. Stone noted written communications were not exchanged in a timely manner. *Id.* at 2. Petitioner received Unsatisfactory ratings for the remaining categories of Work Results, Initiative/Problem Solving, and Work Habits. *Id.* at 2-3. The Unsatisfactory ratings were related to Petitioner's failure to complete work in a timely manner and failure to eliminate his backlog. *Id.* Petitioner received an overall rating of Unsatisfactory, with the following comments:

> Since May 2015, an iteration of the Work Plan has been in place. The latest Work Plan has an effective date of September 20, 2016. It was amended on October 26, 2016. The amended Work Plan identified 12 backlogged cases that require adjudication . . . . At the end of the amended rating period, only 2 of 12 cases were submitted for supervisory review. This submission rate was less than required by the Work Plan. In addition, [four] files that were assigned during the period of the Work Plan lapsed into a backlogged status. Lastly, four cases were reassigned to other [attorney examiners] and this Rater for adjudication during this rating period. The overall rating is unsatisfactory.

*Id.* at 4. Ms. Henry also signed the EPR, and she noted that Petitioner had been on a work plan for over a year and it was imperative he issue final adjudications in a timely manner. *Id.*

Petitioner signed the EPR and indicated he disagreed with the rating and wished to discuss it with the reviewing officer. N.T., 6/5/17, Ex. No. AA-7, at 4. Petitioner did not add any comments to his EPR. *Id.* Ms. Henry and Petitioner

discussed the EPR on December 30, 2016, where, according to Ms. Henry, Petitioner "had an opportunity to speak to the actual plan and the rating." *Id.* at 125-26. Petitioner did not challenge the ratings set forth in the individual sections of the EPR; he only took issue with the overall Unsatisfactory rating. *Id.* at 128. A pre-disciplinary conference was held on January 10, 2017.[1] *Id.*, Ex. No. A.

In a letter dated January 31, 2017, the Department notified Petitioner he was removed from the position of attorney examiner, effective February 3, 2017, for unsatisfactory performance as reflected in his EPR. N.T., 6/5/17, Ex. No. A. Petitioner filed an appeal of his dismissal pursuant to Section 951(a) of the Civil Service Act (Act),[2] which provides that a civil service employee may appeal any personnel action within 20 days. N.T., 6/5/17, Ex. No. B. Petitioner's stated reason for appeal was "[t]he action was unwarranted." *Id.*

By letter dated May 5, 2017, Petitioner requested from the Department monthly work reports submitted by every attorney examiner within the Department's BHA for all of 2015 and 2016 and for January 2017. Certified Record (C.R.), Item No. 4, at 3. Petitioner's request was denied on May 12, 2017, on the basis that his appeal was filed pursuant to Section 951(a) of the Act, and not Section 951(b),[3] and records pertaining to the work of other attorney examiners was not relevant or material to Petitioner's appeal. *Id.* at 4.

---

[1] We assume that Petitioner attended the pre-disciplinary conference since his responses at that conference were deemed "unsatisfactory." N.T., 6/5/17, Ex. No. A. The substance of those responses is unknown, since the certified record contains no additional information about this conference.

[2] Act of August 5, 1941, P.L. 752, *as amended*, 71 P.S. § 741.951(a).

[3] 71 P.S. § 741.951(b). Section 951(b) of the Act addresses appeals which allege discrimination as prohibited by Section 905.1 of the Act, 71 P.S. § 741.905a, *added by* Act of August 27, 1963, P.S. 1257.

On May 22, 2017, Petitioner submitted to the Commission a subpoena request for production of the same documents. C.R., Item No. 4, at 1. Petitioner believed these documents would demonstrate he was assigned and produced more work than other attorney examiners. *Id.* The Commission denied the subpoena request as overbroad and irrelevant to the issues on appeal. C.R., Item No. 6. The denial noted Petitioner had neither alleged discrimination in his appeal, nor had he ever claimed his workload was excessive when compared to other attorney examiners. *Id.* The Commission noted the sole issue on appeal was whether the Department had just cause to remove Petitioner due to his failure to achieve a satisfactory level of job performance. *Id.*

Thereafter, on May 26, 2017, Petitioner sought to amend his original appeal. C.R., Item No. 7, at 1-2. Petitioner asserted he was assigned and produced significantly more work than his peers, which negatively affected his work performance. *Id.* at 1. This work load implicated whether just cause existed to remove Petitioner. *Id.* As the Commission denied Petitioner's subpoena request on the grounds that his appeal lacked the requisite specificity, Petitioner sought to supplement the record by including "more specific facts, including disparate work distribution." *Id.* at 1-2. He further asserted that allowing him to amend his appeal would not prejudice the Department. *Id*. at 2.

The Department objected, arguing that Petitioner, by alleging disparate treatment, was asserting a claim of discrimination, and Petitioner's "bald allegation" that he had a heavier caseload than his peers was not "sufficiently specific to present a prima facie claim of discrimination." *Id*., Item No. 8, at 1-2. The Commission agreed with the Department and denied Petitioner's request to amend his appeal

because Petitioner failed to articulate a discriminatory motive for any *alleged* disparity in work assignments. *Id.*, Item No. 10.

The Commission conducted a hearing on June 5, 2017. The Department presented the testimony of Ms. Stone, Ms. Henry, and Ms. Brown,[4] as well as that of Elbert Barker and Diana Karlinsey, who are Human Resource (HR) Analysts for the Department. Petitioner testified on his own behalf.

Ms. Stone testified that Petitioner did not appeal any of the disciplinary actions taken against him and he had been subject to various work plans since May 2015. N.T., 6/5/17, at 29. Ms. Stone designed Petitioner's September 2016 work plan after completing an audit of the backlogged work assigned to him. *Id.* at 34. The September 2016 work plan was based on a timetable in which Petitioner stated he could finish the work. *Id.* at 32. Ms. Stone highlighted her concern about the backlog because some cases represented matters in which a person was reported to the ChildLine and Abuse Registry (ChildLine)[5] as a perpetrator of child abuse and, consequently, that individual was precluded from working around children. *Id.* at 34-35.

Ms. Stone testified that in October 2016 she performed an interim review of Petitioner's progress in eliminating his backlog. *Id.* at 36. This review indicated Petitioner had not complied with the requirements of the September 2016 work plan.

---

[4] The testimony of Ms. Brown is not particularly instructive as she retired prior to Petitioner's removal. N.T., 6/5/17, at 152. She was aware of the disciplinary actions that had taken place and the next step would have been a pre-disciplinary conference; however, she retired before the conference took place. *Id.* at 152-53.

[5] ChildLine is a unit with the Department of Human Services which operates a statewide system for receiving reports of suspected child abuse, refers the reports for investigation, and maintains the reports for reference. 55 Pa. Code § 3490.4 (definition of "ChildLine"). The ChildLine and Abuse Registry is maintained in accordance with the Child Protective Services Law (CPSL), 23 Pa.C.S. §§ 6301-6386.

*Id. Petitioner* proposed *more demanding* modifications to the September 2016 work plan, however, Ms. Stone felt "those goals might not have been attainable." *Id.* at 38, 41. Consequently, Ms. Stone devised a "less aggressive" schedule for the October 2016 work plan. *Id.* at 40. A meeting was arranged with Petitioner to discuss the requirements of the October 2016 work plan "[s]o that [Petitioner] would clearly understand the expectations of the work plan and understand the seriousness of the discipline that could ensue if the requirements of the work plan were not met." *Id.* at 42. Petitioner did not meet the December 16, 2016 deadline for eliminating his backlog, and four new matters assigned to him during this period lapsed into a backlogged status. *Id.* at 54, 59. At that point, some of Petitioner's backlogged matters were reassigned to Petitioner's co-workers for adjudication. *Id.* at 54. As a result of Petitioner's non-compliance with the October 2016 work plan, he received an overall rating of unsatisfactory on his final EPR. *Id.* at 59.

On cross-examination, Petitioner asked Ms. Stone whether she recalled his explanation for his work performance. *Id.* at 67. Ms. Stone testified that Petitioner was of the belief that he "worked harder than anyone else in the [BHA]." *Id.* at 67. However, she stated the data did not support that belief. *Id.* at 68. When asked by Petitioner if he "produce[d] a lot of work," Ms. Stone responded that "[l]ooking at recipient appeal numbers, I would say yes . . . . [L]ooking at formal appeal numbers I would say no." *Id.* at 62. Ms. Stone acknowledged that while attorney examiners were scheduled to conduct a certain number of formal hearings each week, if a formal hearing was not available, that attorney examiner would instead receive a list of recipient appeals to adjudicate. *Id.* at 65. Therefore, cases were not necessarily divided evenly among the attorney examiners. *Id.* Rather, they were assigned

8

"[b]ased on the availability of cases and the need of the Bureau or the region during that time." *Id.* at 66.

Ms. Stone could not recall whether Petitioner agreed with the need for a work plan; however, she viewed it as required given the amount of Petitioner's work that was backlogged. *Id.* at 70. There was never a period of time after May 2015 that Petitioner did not have a backlog. *Id.* at 71. Ms. Stone testified that, had Petitioner met the requirements of the work plan, even if newly assigned matters were added to the backlog, he could have received a Needs Improvement rating on his final EPR. *Id.*

Ms. Henry testified generally about her duties as BHA Director and her involvement in the decision to remove Petitioner from his position as an attorney examiner. Ms. Henry made the decision to repeat Petitioner's ADLS 2 because she wanted to ensure that Petitioner understood the significance of the disciplinary process and that he was expected to complete his backlogged work as scheduled. N.T., 6/5/17, at 122, 141. Ms. Henry testified that she wanted Petitioner to succeed because the BHA does not benefit from "hiring people, training them and then just terminating them." *Id.* at 122. She described the decision to allow Petitioner to participate in the creation of his work plan as "unusual." *Id.* at 125. Ms. Henry believed Petitioner had ample opportunity to clear his backlog, the Department had "done all [it] could possibly do," and removal was appropriate. *Id.* at 119.

On cross-examination, Petitioner questioned Ms. Henry generally about the amount of work assigned to him. N.T., 6/5/17, at 128. Ms. Henry testified that, even if Petitioner had a higher caseload than other attorney examiners, one had to consider the issues being adjudicated. *Id.* at 129. Caseload records only reported the number of matters assigned to an individual, not the substance of those matters. *Id.* at 130.

9

The remaining testimonies concerned the procedures taken from an HR perspective. Mr. Barker testified he is responsible for reviewing disciplinary actions and ensuring they conformed with Department policies. N.T., 6/5/17, at 159. He reviewed Petitioner's work plans, EPRs, and the disciplinary notices sent by the Department. *Id.* at 160. Mr. Barker testified that the progression of discipline within the Department begins with an oral reprimand, followed by a written reprimand. *Id.* at 162. These actions are followed by the ADLS 1 and ADLS 2, *with discharge being the final step if improvement does not occur*. *Id.* Mr. Barker could not recall another time in which the ADLS 2 was repeated. *Id.* As Petitioner's September 2016 EPR was unsatisfactory, grounds existed to remove Petitioner without repeating the ADLS 2. *Id.* at 163. The only option remaining for the Department following the unsatisfactory EPR in December 2016, other than removal, would have been to repeat the ADLS 2 a third time. *Id.*

Ms. Karlinsey also reviewed the prior corrective actions taken with regard to Petitioner's unsatisfactory EPR. N.T., 6/5/17, at 169. The December 2016 EPR was "the latest in a series" of unsatisfactory EPRs.[6] *Id.* at 169-70. After concluding her review of Petitioner's disciplinary record, Ms. Karlinsey approved Petitioner's removal from his position as attorney examiner. *Id.*

Petitioner testified he "did a lot of work," and believed the work he produced was of very high quality. N.T., 6/5/17, at 186. Petitioner did not agree that he needed a work plan. *Id.* at 188. Petitioner maintained that any reasonable person in his situation would have a backlog, and the amount of work he produced was "justifiable." *Id.* at 190-91. Petitioner testified he chose not to appeal any of the

---

[6] The certified record filed with this Court does not contain any records or information pertaining to Petitioner's prior unsatisfactory EPRs.

10

prior disciplinary actions because he was not negatively affected by them. *Id.* at 189.
He stated:

> I was not aggrieved by any of the prior discipline actions – disciplinary actions, because there was no consequence, really. I would get a notice saying that, you know, I wasn't losing any pay. I wasn't losing any seniority or things like that. There was no indication I would be losing anything. It was not until I was actually removed that I was prompted to appeal. Having said that, I didn't agree with any of those disciplinary actions. I never really agreed with the work plans. Never really agreed with the actions that were taken against me.

*Id.* at 189-90. Petitioner did not deny the existence of a backlog or argue he had complied with the requirements of the September 2016 or October 2016 work plans.

The Commission issued its decision on March 30, 2018. Based on the testimonies of Ms. Henry and Ms. Stone, which the Commission deemed credible, the Commission determined the Department met its burden to show Petitioner's work performance was unsatisfactory. Commission's Adjudication at 12. Petitioner was subject to multiple work plans due to his failure to timely adjudicate his assigned cases. Commission's Adjudication, Findings of Fact (F.F.) Nos. 9, 12, 17. Petitioner agreed, without objection, to produce the number of backlogged adjudications provided for in the September 2016 and October 2016 work plans, but he failed to comply with either plan. F.F. Nos. 12, 15, 17, 19. As a consequence, Petitioner received an overall rating of Unsatisfactory in his final EPR. F.F. No. 21. Petitioner received five separate disciplinary actions related to his failure to adjudicate cases. F.F. No. 1, 26. The Commission concluded the Department presented evidence

11

sufficient to establish just cause for removal under Section 807 of the Act.[7] Commission's Adjudication at 15.

## Issues

On appeal,[8] Petitioner alleges the following errors: 1) the Commission improperly declined to consider records relating to Petitioner's work product and that of his co-workers; 2) the Commission should have allowed Petitioner to amend his appeal; 3) the Commission's decision was not supported by substantial evidence and just cause did not exist to remove Petitioner; and 4) the Commission should have reinstated Petitioner when it failed to issue its determination within 90 days as required by Section 952 of the Act.[9]

## Discussion

First, Petitioner argues the Commission erred when it failed to consider records which compared his work product to that of his peers. Specifically, Petitioner maintains that the monthly work reports submitted by every attorney examiner for 2015, 2016, and January 2017 would demonstrate that he was assigned more work than other employees in his classification. Petitioner disputes the conclusion by the Commission that such records are irrelevant and go towards a discrimination claim which he failed to articulate. Rather, Petitioner argues, his workload, and the workload of his co-workers, goes to whether the Commission

---

[7] Section 807 of the Act provides that no employee may be removed without just cause. 71 P.S. § 741.807.

[8] Our review of the Commission's decision is limited to determining whether the factual findings are supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated. *Dep't of Transp. v. State Civil Serv. Comm'n (Bocchinfuso)*, 84 A.3d 779, 783 n.2 (Pa. Cmwlth. 2014).

[9] Section 952(a) provides that the Commission is to report its findings and conclusions within 90 days of the hearing. 71 P.S. § 741.952(a), *added by*, Act of June 26, 1989, P.L. 47.

12

properly found just cause for removing him. Petitioner submits his workload compared to other attorney examiners is relevant because the amount of work he was assigned caused the backlog which led to his removal.

In response, the Department maintains that the Commission has broad discretion in admitting or excluding evidence and the Commission may exclude evidence it deems irrelevant.

Pursuant to Section 505 of the Administrative Agency Law, Commonwealth agencies are not bound by technical rules of evidence and "all relevant evidence of reasonably probative value may be received." 2 Pa.C.S. § 505. Administrative agencies have broad discretion in admitting or excluding evidence; exclusion of evidence alone may not constitute a procedural defect. *D.Z. v. Bethlehem Area Sch. Dist.*, 2 A.3d 742, 751 (Pa. Cmwlth. 2010). Where the record reveals the evidence sought to be introduced is not reasonably probative, the evidence may be excluded. *Id.*

At issue is whether the records Petitioner requested are relevant to the Commission's conclusion that the Department had just cause to terminate his employment. Petitioner was removed after failing to comply with various work plans that had been in place over the course of two years. Petitioner has never suggested that the schedule set forth in those work plans was unreasonable or that he could not adjudicate the backlogged matters as required. In fact, Petitioner was personally involved in the creation of the schedule. Petitioner was provided the opportunity to submit comments in his final EPR but he merely indicated he disagreed with the unsatisfactory rating. It is clear from Petitioner's own testimony that he was unconcerned about his backlog, and the five disciplinary actions that resulted from the backlog, until he was actually removed from employment. Further,

as Ms. Henry credibly testified, the volume of an individual's caseload is not the only issue to consider. The substance of the matters being adjudicated is also an important consideration.

The factors which created Petitioner's backlog are not relevant to whether the Department had just cause to remove Petitioner from the position of attorney examiner. What is relevant is how Petitioner addressed that backlog and whether he complied with the work plans devised by the Department. The fact that he did not comply is not in dispute. Petitioner was provided an additional 7 weeks in which to adjudicate his 12 backlogged cases. During those seven weeks, he was only able to adjudicate two matters from his backlog. Consequently, we agree with the Department that the records sought in Petitioner's subpoena are not relevant and that those records were properly excluded from consideration.

Next, Petitioner argues that the Commission erred when it denied his request to amend his appeal. Petitioner contends that the Commission's denial amounts to an abuse of discretion – amendment of his appeal would not have prejudiced the Department, and it would have allowed him to receive the records described in his subpoena request. The Department argues the Commission correctly denied the request to amend because Petitioner failed to articulate a discriminatory motive for the alleged disparity in work assignments.

Petitioner makes it clear that his amendment request was purely a means to obtain the records sought in his subpoena request. Although the plain language of Petitioner's amendment request indicated he wished to assert disparate treatment in the distribution of work**,** *he states unequivocally in his appellate brief that* "[he] did not possess a good faith belief that intentional or traditional discrimination was applicable." Petitioner's Br. at 17.

14

We have already concluded the records sought by Petitioner are not relevant to an analysis of whether the Department had just cause to remove him from employment. Petitioner's sole motive for seeking to amend his appeal was an end run around the denial of access to those records. As such, Petitioner was not harmed by the denial of his amendment request, and we discern no error on the part of the Commission.

Next, Petitioner argues the decision of the Commission was not supported by substantial evidence and the Commission lacked just cause to remove him from his employment.

The burden of proving just cause belongs to the appointing agency, in this case the Department. *Pike Cty. Child Welfare Serv. v. State Civil Serv. Comm'n*, 143 A.3d 1030, 1035 (Pa. Cmwlth. 2016). To prove just cause, the Department:

> must demonstrate that the actions resulting in the removal are related to an employee's job performance and touch in some rational and logical manner upon the employee's competence and ability. What constitutes ample just cause for removal is largely a matter of discretion on the part of the head of the department. However, to be sufficient, the cause should be personal to the employee and such as to render the employee unfit for his or her position, thus making dismissal justifiable and for the good of the service.

*Id.* (quoting *Pa. Bd. of Prob. and Parole v. State Civil Serv. Comm'n*, 4 A.3d 1106, 1112 (Pa. Cmwlth. 2010)). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Morningstar v. Dep't of Transp.*, 646 A.2d 666, 668 (Pa. Cmwlth. 1994).

The Department's HR Policy sets forth several disciplinary steps to be taken prior to an employee's discharge. N.T., 6/5/17, Ex. AA-9. Those steps are: oral reprimand and creation of a work plan for a first offense; written reprimand for a

15

second offense and the work plan is revised as necessary; and a third or subsequent offense requires an ADLS 1 followed by an ADLS 2, with a final warning. *Id.* Revisions to any existing work plan are made as necessary. *Id.* A fifth offense results in discharge. *Id.*

The Department removed Petitioner because of his failure to comply with the work plans that were put in place to address his backlog, and because his overall rating in the final EPR was Unsatisfactory. The Unsatisfactory rating was based on Petitioner's failure to comply with the requirements of various work plans that had been in place since May 2015. The schedule set forth in the October 2016 work plan contemplated Petitioner completing no more than two backlogged matters per week. For weeks that included a holiday, Petitioner's obligation to complete backlogged work was reduced to one or zero. Petitioner was involved in the creation of this schedule. It was, in fact, less aggressive than the one he originally proposed to Ms. Stone. Petitioner's overall rating could have progressed to Needs Improvement if he had fulfilled the requirements of his work plan. Petitioner never challenged the propriety of the work plans despite ample opportunity to do so.

All disciplinary actions required under the Department's HR policy were taken, including repetition of the ADLS 2. Petitioner's responses at the January 10, 2017 pre-disciplinary conference were deemed unsatisfactory. N.T., 6/5/17, Ex. No. A.

Ultimately, Petitioner was responsible for adjudicating the cases assigned to him. His failure to adjudicate those matters in a timely manner is clearly related to his job performance, competence, and ability. It is difficult to contemplate how the

decision to remove Petitioner from a job he was either unwilling or unable to perform effectively was not both justified and "for the good of the service."[10]

Accordingly, we conclude the Department had just cause to remove Petitioner from his position as attorney examiner and the Commission's affirmation of that decision was supported by substantial evidence.

Finally, Petitioner argues that the Commission's failure to issue its adjudication within 90 days of the conclusion of the hearing mandates his reinstatement. Petitioner cites no authority whatsoever to support this assertion.[11] Petitioner is correct that Section 952(a) of the Act requires the Commission to report its findings and conclusions within 90 days of the conclusion of the hearing. 71 P.S. § 741.952(a). However, "[w]hether the Commission's failure to report its findings within 90 days invalidates the proceeding depends on whether Section 952(a) is mandatory or directory." *Carr v. Dep't of Transp.*, 189 A.3d 1, 9 (Pa. Cmwlth. 2018). Statutory provisions containing the word "shall" are generally considered mandatory, "[e]xcept when relating to the time of doing something." *Fishkin v. Hi-Acres, Inc.*, 341 A.2d 95, 97 (Pa. 1975). If a statute merely directs that certain proceedings be done in a certain manner or at a certain time, it is directory; failure to follow a directory statute does not render those proceedings void. *West Penn Power Co. v. Pa. Pub. Util. Comm'n*, 521 A.2d 75, 78 (Pa. Cmwlth. 1987). This

---

[10] Beyond Ms. Stone's testimony that Petitioner believed he worked harder than everyone else at the BHA, there is no indication in the record that Petitioner ever claimed his workload was a barrier to completion of his assigned work. Petitioner admitted that he never challenged his disciplinary actions because he suffered no real consequences. Petitioner's claim that an uneven distribution of work caused his backlog only occurred when he was removed from his position despite having nearly two years of disciplinary interventions on this issue.

[11] Beyond citing case law which simply iterates the just cause requirement of Section 807 of the Act, Petitioner has not supported **any** of his arguments with relevant legal authority.

Court has previously held that statutes which seek to impose time limitations on adjudicating tribunals are directory only and, consequently, Section 952(a) must be read as directory. *Baker v. Dep't of Pub. Welfare*, 588 A.2d 1337, 1340 (Pa Cmwlth. 1991). *See also Carr*.

As our Court has previously held that this statutory period is directory and not mandatory, we reject Petitioner's argument that the Commission's failure to report its findings and conclusions within 90 days mandates his reinstatement as attorney examiner.

For these reasons, we affirm the decision of the Commission.

_____
ELLEN CEISLER, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Derrick D. Crago,                :
         Petitioner      :
                      :
      v.              :  No. 617 C.D. 2018
                      :
State Civil Service Commission  :
(Department of Human Services),  :
        Respondent   :

**O R D E R**

AND NOW, this 15th day of November, 2018, the Order of the State Civil Service Commission, dated March 30, 2018, is hereby AFFIRMED.

_____
ELLEN CEISLER, Judge